# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————————————— )
UNITED STATES OF AMERICA,            )
                                      )
                                      )      Civil Action No. 23-cv-07173
                   Plaintiff,        )      (Merchant, J.)
                                      )      (Bloom, M.J.)
        v.                           )
                                      )
                                      )
EBAY INC.                              )
                                      )
                   Defendant.    )
———————————————————————— )

# UNITED STATES' OPPOSITION
# TO DEFENDANT'S MOTION TO DISMISS

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

BREON PEACE
United States Attorney
Eastern District of New York

JAMES D. FREEMAN
Senior Attorney
Environmental Enforcement Section

MICHAEL S. BLUME
PAULINA STAMATELOS
Assistant United States Attorneys

January 26, 2024

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................... 1

STANDARD OF REVIEW ....................................................................................... 2

STATUTORY AND REGULATORY BACKGROUND .............................................. 3

    A.    Clean Air Act ........................................................................................ 3

    B.    Toxic Substances Control Act .............................................................. 3

    C.    Federal Insecticide, Fungicide and Rodenticide Act ............................ 4

FACTS ....................................................................................................................... 4

    A.    Illegal Products Sold on eBay.com ....................................................... 4

    B.    eBay's Involvement in and Control over Transactions on eBay.com ........ 5

    C.    eBay's Involvement in Product Listings ................................................ 5

    D.    eBay's Control Over What a Consumer Sees ....................................... 6

    E.    eBay's Control Over the Transaction Itself .......................................... 6

    F.    eBay's Control Over Communications Between Merchant and Buyer ......... 7

    G.    eBay's Proactive and Continued Involvement in Pushing Sales ............ 7

    H.    eBay Sold Hundreds of Thousands of Unlawful Products Using these Tactics ..... 7

ARGUMENT ............................................................................................................. 8

I.    THE COMPLAINT STATES LEGALLY SUFFICIENT CLAIMS UNDER THE CAA, TSCA, AND FIFRA ................................................................................... 8

    A.    eBay Violated the Clean Air Act .......................................................... 9

        1.    eBay Sold Emissions Defeat Devices ....................................... 9

        2.    eBay "Offered to Sell" Emissions Defeat Devices ................... 15

        3.    eBay "Caused" the Sale of Emissions Defeat Devices ............ 16

        4.    eBay Knew or Should Have Known That It Was Selling Emissions Defeat Devices ................................................................................... 19

    B.    eBay Distributed in Commerce Methylene Chloride Containing Products in Violation of TSCA ................................................................................... 20

    C.    eBay Distributed or Sold Illegal Pesticides in Violation of FIFRA ..................... 22

    D.    The Broad Wording and Clear Purpose of the Relevant Statutes Show that Congress Intended for Entities like eBay to be Covered by Them ....................... 23

i

II.     THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE EBAY'S
        ILLEGAL CONDUCT ................................................................................................. 23

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alibaba.com Hong Kong LTD v. P.S. Prod., Inc.*,
No. C 10-04457-WHA, 2012 WL 1668896 (N.D. Cal. May 11, 2012) ................................. 16

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) ........................................................................................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 2

*Barnes v. United States*,
142 F.2d 648 (9th Cir. 1944) ............................................................................................... 21

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) .............................................................................................................. 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 3

*Blazer v. eBay, Inc.*,
No. 1:15-CV-01059-KOB, 2017 WL 1047572 (N.D. Ala., Mar. 20, 2017) .......................... 16

*Bolger v. Amazon.com, LLC*,
267 Cal. Rptr. 3d 601 (Cal. Ct. App. 2020) ................................................................. 13, 25

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ............................................................................................... 18

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) ............................................................................................................ 14

*Erie Ins. Co. v. Amazon.com, Inc.*,
925 F.3d 135 (4th Cir. 2019) ......................................................................................... 13, 25

*Federal Trade Comm'n v. LeadClick Media, LLC*,
838 F.3d 158 (2d Cir. 2016) .......................................................................................... 24, 25

*Flood v. Just Energy Mktg. Corp.*,
904 F.3d 219 (2d Cir. 2018) ............................................................................................... 11

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ................................................................................................. 24

*Hartmann v. Amazon.com, Inc.*,
   20 Civ. 4928 (PAE), 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ................................. 19, 20

*Liu v. Sec. & Exch. Comm'n*,
   140 S. Ct. 1936 (2020) ........................................................................................................ 25

*Loomis v. Amazon.com LLC*,
   277 Cal. Rptr. 3d 769 (Cal. Ct. App. 2021) ...................................................................... 12, 13

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   No. C13-1932-RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015) ................................. 16

*Nye & Nissen v. United States*,
   336 U.S. 613 (1949) ............................................................................................................ 17

*Omega SA v. 375 Canal, LLC*,
   984 F.3d 244 (2d Cir. 2021) ................................................................................................ 20

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ..................................................................................................... 11, 16

*Porter v. Warner Holdings Co.*,
   328 U.S. 395 (1946) ............................................................................................................ 25

*Rosemond v. United States*,
   572 U.S. 65 (2014) .............................................................................................................. 17

*Royal Ins. Co. of Am. v. Bos. Beer Co.*,
   No. 1:04cv2295, 2007 WL 1072166 (N.D. Ohio Apr. 5, 2007) .......................................... 11

*State Farm Fire & Cas. Co. v. Amazon.com Serv., Inc.*,
   137 N.Y.S.3d 884 (N.Y. Sup. Ct. 2020) ............................................................................ 13

*State Farm Fire & Cas. Co. v. Amazon.com, Inc.*,
   390 F. Supp. 3d 964 (W.D. Wis. 2019) ........................................................................ 12, 13

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008) ................................................................................ 14

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   600 F.3d 93 (2d Cir. 2010) ........................................................................................ 14, 19, 20

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) ...................................................................................................... 17, 18

*United States v. Cinergy Corp.*,
   582 F. Supp. 2d 1055 (S.D. Ind. 2008) .............................................................................. 25

iv

*United States v. Dauray,*
  215 F.3d 257 (2d Cir. 2000)............................................................................... 9, 23

*United States v. Jones,*
  965 F.3d 190 (2d Cir. 2020)................................................................................... 21

*United States v. Lane Labs-USA Inc,*
  427 F.3d 219 (3d Cir. 2005)................................................................................... 25

*United States v. NGL Crude Logistics, LLC,*
  No. 16-CV-1038-LRR, 2017 WL 2268324 (N.D. Iowa May 24, 2017) ................................ 17

*United States v. Sullivan,*
  332 U.S. 689 (1948)................................................................................................ 22

*United States v. Twenty-Five Packages of Pan. Hats,*
  231 U.S. 358 (1913)................................................................................................ 22

*Utah Physicians for a Health Env't v. Diesel Power Gear LLC,*
  No. 2:17-cv-00032-RJS-DBP, 2020 WL 4282148 (D. Utah, Mar. 6, 2020) ..................... 13, 14

*Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC,*
  374 F. Supp. 3d 1124 (D. Utah 2019) ..................................................................... 13

*Watts v. Andrews,*
  649 P.2d 472 (N.M. 1982) ..................................................................................... 11

**Statutes**

U.C.C. § 2-102 ............................................................................................................ 10

U.C.C. § 2-106(1) ....................................................................................................... 10

7 U.S.C. § 136(gg) ................................................................................................. 4, 22

7 U.S.C. § 136(u) .......................................................................................................... 4

7 U.S.C. § 136a(a) ................................................................................................. 4, 22

7 U.S.C. § 136a(c) ........................................................................................................ 4

7 U.S.C. § 136j(a) ................................................................................................. 1, 22

7 U.S.C. § 136j(a)(1)(E) ............................................................................................... 4

7 U.S.C. § 136j(a)(2)(F) ............................................................................................... 4

7 U.S.C. § 136k ..................................................................................................... 1, 22

7 U.S.C. § 136k(a) .......................................................................................................... 4

15 U.S.C. § 45f(a) ......................................................................................................... 15

15 U.S.C. § 45f(f)(6)(A) ................................................................................................ 15

15 U.S.C. § 45f(f)(6)(B)(i) ............................................................................................ 15

15 U.S.C. § 2601(b)(2) .................................................................................................... 3

15 U.S.C. § 2602(5) ............................................................................................ 4, 20, 21

15 U.S.C. § 2605(a) ......................................................................................................... 3

15 U.S.C. § 2614(1) ......................................................................................................... 1

21 U.S.C. § 301 ............................................................................................................. 21

42 U.S.C. § 7522(a) ......................................................................................................... 3

42 U.S.C. § 7522(a)(1) .................................................................................................. 10

42 U.S.C. § 7522(a)(3)(B) ..................................................................................... 1, 3, 10

47 U.S.C. § 230(c)(1) .............................................................................................. 23, 24

47 U.S.C. § 230(f)(3) ..................................................................................................... 24

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ......................................................................... 2

**Regulations**

40 C.F.R. § 86.1803-01 .................................................................................................... 3

40 C.F.R. § 751.103 .............................................................................................. 4, 21, 22

40 C.F.R. § 751.105(c) ................................................................................................ 3, 20

40 C.F.R. §§ 751.101-751.109 ..................................................................................... 1, 3

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) ........................................................................ 9

Catherine M. Sharkey, *Products Liability in the Digital Age: Online Platforms as "Cheapest Cost Avoiders,"* 73 Hastings L.J. 1327 (2022) ........................................................ 13

*Merriam-Webster Thesaurus, merriam-webster.com/thesaurus/cause* ........................................ 16

Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 29 (2010) .................... 17

Restatement (Second) of Torts § 431 (1965). ............................................................................. 17

*Webster's Third New International Dictionary* (1981) ................................................ 9, 10, 15, 16

## PRELIMINARY STATEMENT

eBay Inc. ("eBay") sells and distributes products banned by environmental protection statutes. These products, commonly found on eBay's website ebay.com, pose substantial (and in some cases potentially fatal) consequences to human health and the environment. The Environmental Protection Agency ("EPA") has identified hundreds of thousands of sales of unlawful goods on ebay.com, including: (1) aftermarket parts that defeat motor vehicle emission controls, in violation the Clean Air Act ("CAA"), 42 U.S.C. § 7522(a)(3)(B); (2) methylene chloride-containing products for paint-and-coating removal, in violation of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2614(1), and its implementing regulations, 40 C.F.R. §§ 751.101-751.109; and (3) unregistered, misbranded, and restricted-use pesticides in violation of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and in some cases in violation of an EPA stop-sale order, 7 U.S.C. §§ 136j(a), 136k.

eBay wants this Court to absolve it of all responsibility for these illegal sales and instead deflects blame to third-party merchants that list the unlawful products on ebay.com. In eBay's words, it should not be held responsible for "allowing those listings to turn into sales," Memorandum in Support of Motion to Dismiss ("Mem.") at 23, as if it were completely divorced from those transactions.

eBay is not, however, the innocent bystander it purports to be. The Complaint's allegations, taken as true, demonstrate that eBay participates in and controls every transaction on ebay.com. eBay actively markets the products listed on ebay.com prior to sale, including "sponsoring" certain items; manages all aspects of the sales transaction (creating a virtual eBay shopping cart, accepting the purchaser's payment on an eBay payment page, processing that payment, taking a fee, paying the third-party merchant, and collecting and paying sales taxes and other regulatory fees); prohibits merchants and buyers from transacting business off its site; and

1

provides a money-back guarantee in the event the product is not delivered. These actions may be good for business – a would-be customer undoubtedly feels more secure purchasing a product on eBay than from the website of a foreign company or a small company with unknown bona fides. But the imprimatur that comes with eBay's pervasive control over the transaction comes with legal responsibilities – eBay must comply with environmental laws applicable to sellers and distributors of products.

eBay's contention that it does not "sell" products is based on the premise that a "seller" must possess, or have title to, the product it is selling. But this unduly narrow definition of "sell" disregards the term's common usage. It ignores broader dictionary definitions. And it finds no support in the statutory text. To the contrary, a narrow definition of "sell" is inconsistent with the wide range of conduct Congress prohibited in its effort to prevent unlawful products from reaching consumers. Indeed, judicial decisions applying this common-sense understanding of "seller" to the current practices of online businesses have found companies like eBay to be sellers. eBay's contentions that it does not "offer" for sale, "cause sales" or "distribute in commerce" are similarly incorrect.

Put simply, eBay sells and distributes illegal products. It should be held accountable.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A complaint is sufficient if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. All that a

plaintiff is required to establish is that its claims "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## STATUTORY AND REGULATORY BACKGROUND

### A.    Clean Air Act

Section 203(a)(3)(B) of the CAA makes it unlawful for:

> any person to manufacture or sell, or offer to sell, or install any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

42 U.S.C. § 7522(a)(3)(B). The statute also prohibits any person to cause any of these acts. *See* 42 U.S.C. § 7522(a). An "element of design" is "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interaction, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R. § 86.1803-01.

### B.    Toxic Substances Control Act

Congress enacted TSCA in part to "regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(2). Section 6(a) of TSCA authorizes EPA to issue rules that address the unreasonable risk of a chemical substance. *See* 15 U.S.C. § 2605(a). Pursuant to this section, EPA promulgated a rule to address the risk of acute lethality presented by methylene chloride in paint-and-coating-removal consumer products. *See* 40 C.F.R. §§ 751.101 *et seq*. (the "Methylene Chloride Rule").

The Methylene Chloride Rule prohibits "retailers . . . from distributing in commerce methylene chloride, including any methylene chloride containing products, for paint and coating removal." 40 C.F.R. § 751.105(c). It defines "retailer" to mean "a person who distributes in

commerce or makes available a chemical substance or mixture to consumer end users, including e-commerce internet sales or distribution." 40 C.F.R. § 751.103. TSCA defines "distribute in commerce" as "to sell, or the sale of, the substance, mixture, or article in commerce; to introduce or deliver for introduction into commerce, or the introduction or delivery for introduction into commerce of, the substance, mixture, or article; or to hold, or the holding of, the substance, mixture, or article after its introduction into commerce." 15 U.S.C. § 2602(5).

### C. Federal Insecticide, Fungicide and Rodenticide Act

FIFRA authorizes EPA to regulate the distribution, sale, and use of pesticides "[t]o the extent necessary to prevent unreasonable adverse effects on the environment." 7 U.S.C. § 136a(a). A "pesticide" includes, among other things, "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest." 7 U.S.C. § 136(u). EPA regulates pesticides primarily through the registration procedures in Section 3 of FIFRA. *See* 7 U.S.C. § 136a(c). FIFRA provides that no person may "distribute or sell" any pesticide that has not been registered. *See* 7 U.S.C. §§ 136a(a), 136j(a)(1)(A). To "distribute or sell" means "to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver." 7 U.S.C. § 136(gg). FIFRA also prohibits the distribution or sale of misbranded pesticides or restricted-use pesticides for general use. 7 U.S.C. § 136j(a)(1)(E); (2)(F).[1]

### FACTS

### A. Illegal Products Sold on eBay.com

The Complaint alleges that eBay sold three types of products in violation of

---

[1] EPA may issue a Stop Sale, Use, or Removal Order ("SSURO") to "any person who owns, controls, or has custody of" a pesticide whenever EPA has reason to believe that a pesticide is in violation of any provision of FIFRA. 7 U.S.C. § 136k(a). A person who receives a SSURO may not "sell, use, or remove the pesticide or device described in the order except in accordance with the provisions of the order." 7 U.S.C. § 136k(a).

environmental laws. First, eBay sold aftermarket parts that defeat motor vehicle emissions controls, in violation of the CAA. Commonly known as defeat devices, these products can be hardware or computer software (called tunes and tuners) that override the manufacturer-installed systems limiting harmful pollutants in motor-vehicle emissions. Compl. ¶¶ 8-55. Second, eBay sold paint-and-coating removal products containing methylene chloride, in violation of TSCA and the Methylene Chloride Rule. *Id.* ¶¶ 56-68. Third, eBay sold unregistered, misbranded, and restricted-use pesticides, in violation of FIFRA. *Id.* ¶¶ 69-85.

### B.    eBay's Involvement in and Control over Transactions on eBay.com

eBay operates ebay.com, an online store where consumers can browse or search for products listed by third-party merchants. *Id.* ¶ 86. eBay actively markets the products listed on its site; controls what products a consumer sees for purchase; prohibits participants in its online store from transacting business elsewhere; controls all aspects of the sales transaction; and provides a money-back guarantee if the product is not delivered. *Id.* ¶¶ 87, 108-12, 130-36. eBay algorithms track potential buyers' search-and-purchase histories and direct them to products they might not otherwise have sought. *Id.* ¶¶ 87, 137-44. In short, eBay induces transactions between buyers and merchants who may not otherwise have found each other or transacted business together. *Id.* ¶ 88.

### C.    eBay's Involvement in Product Listings

eBay's control begins even before a merchant lists a product on eBay.com. eBay helps merchants create product listings based on eBay's own data. *Id.* ¶ 95. That vast amount of data includes, among other things, sales metrics and pricing information, both for a merchant's products and for competing products; information on how consumers search eBay.com; and product-description tools that are developed based on how consumers react to the content and design of product listings. *Id.* ¶ 107. No individual merchant would have access to that data or

the capability to analyze it, but for eBay. *Id.* ¶ 106. Using this data – along with the information eBay shares about its search algorithms – merchants can tailor their listings so that their products appear higher in a buyer's search results, thereby selling their products more effectively. *Id.* ¶¶ 95, 97-98, 100.

### D.    eBay's Control Over What a Consumer Sees

The products that consumers see when they browse ebay.com depend not only on what they search for but on what eBay wants them to see. When consumers search for a product, eBay creates a list of products that eBay deems most relevant for them. *Id.* ¶ 135. eBay lists those products in a hierarchy based on the search query, the consumers' history on the site, the general popularity of various products, the quality of the products' listings, and the merchants' track records based on eBay's evaluation of their past performance. *Id.* ¶ 136. eBay displays products that the consumers do not search for, but that, based on its data, eBay believes the consumers may want. *Id.* ¶ 137. eBay shows consumers items like the ones the consumers specifically searched for, labeled "Similar items, "Sponsored items from this seller," or "Sponsored items based on your recent views." *Id.* ¶ 138. eBay also displays products that other consumers searched for and products it identifies as "related products." *Id.* ¶¶ 139-40.

### E.    eBay's Control Over the Transaction Itself

Every step in an eBay sales transaction occurs on and through eBay.com. The consumer puts the item in a virtual shopping cart on the website, clicks on the "Go to checkout" button, provides payment on the "eBay Checkout" webpage, and clicks the "Confirm and pay" button. *Id.* ¶ 108. eBay accepts the consumer's payment, collects its fee, and pays the merchant that listed the product. *Id.* ¶ 109. eBay calculates, collects, and remits sales taxes and other regulatory fees. *Id.* In addition, eBay provides shipping assistance to the merchant, both in the United States and globally. *Id.* ¶¶ 114-20. A merchant can purchase and print shipping labels from eBay to get

6

discounted postage rates that eBay has negotiated with shippers. *Id.*

**F.      eBay's Control Over Communications Between Merchant and Buyer**

eBay prohibits consumers and merchants that find each other on ebay.com from "meeting" off-site to transact a sale. *Id.* ¶ 130. If a consumer and merchant find each other on eBay, the merchant cannot provide the consumer with off-site contact information. *Id.* ¶ 131. If there are questions about the product, the merchant and the consumer must communicate through eBay's message system. *See, e.g., id.* ¶ 161. Should there be a problem with a transaction, eBay handles any disputes between the consumer and merchant and can put a hold on any payment to the merchant until the dispute is resolved. *Id.* ¶ 111. eBay assists with any returns or refunds, and it offers a money back guarantee if the merchant fails to deliver the product. *Id.* ¶¶ 111-12. If eBay determines that a merchant is listing a product in violation of its rules, eBay can prevent the sale of that product. *Id.* ¶¶ 92-93.

**G.      eBay's Proactive and Continued Involvement in Pushing Sales**

eBay's involvement with the consumer continues beyond individual purchases. eBay induces consumers into making further purchases by sending unsolicited, targeted emails offering them particular products based on their searching, viewing, and purchasing history. *Id.* ¶¶ 141-42. eBay sends them coupons for products that they viewed but did not purchase. *Id.* ¶ 143. And it uses cookies and web beacons to track consumers when they visit other websites, thereby allowing eBay to target them with ads for products on eBay as they are browsing other sites. *Id.* ¶ 144.

**H.      eBay Sold Hundreds of Thousands of Unlawful Products Using these Tactics**

eBay sold hundreds of thousands of products in violation of the CAA, TSCA, and FIFRA. eBay sold over 340,000 defeat devices. *Id.* ¶ 169. Use of such devices can increase tailpipe emissions of nitrogen oxides by a factor of up to 300 times, of carbon monoxide by a

factor of approximately 130 times, of non-methane hydrocarbons by a factor of approximately 1,000 times, and of particulate matter by a factor of up to 37 times. *Id.* ¶ 16. eBay also sold over 5,600 products containing methylene chloride. *Id.* ¶¶ 176, 180. Such products pose a risk of acute lethality and neurological impairment and have been linked to an increased risk of certain deadly cancers. *Id.* ¶¶ 59-61. eBay also sold over 23,000 illegal, harmful pesticides, many of which it sold after EPA specifically ordered it to stop with a SSURO. *Id.* ¶¶ 73-75, 217, 221-22, 225, 261.

To sell these dangerous – and illegal – products, eBay engaged in the very tactics described above. For instance, an investigator who searched eBay for an "egr kit," which is not on its face an illegal defeat device, was shown an illegal product and was also shown related "egr delete kits," which are illegal on their face and which the investigator did not search for. *Id.* ¶¶ 236-37. In another instance, an investigator who viewed but did not purchase a paint-stripping product later received an unsolicited email from eBay telling him that the product had been relisted and pointing him to other products he did not search for or view. *Id.* ¶ 241. These "Similar Picks," as eBay labeled them, contained methylene chloride. *Id.* In yet another instance, an investigator who viewed an illegal defeat device later received an unsolicited email that offered him an eBay coupon to purchase that illegal product. *Id.* ¶ 243.

## ARGUMENT

### I.   The Complaint States Legally Sufficient Claims under the CAA, TSCA, and FIFRA

The Government's Complaint alleges facts to support plausible, and hence legally sufficient, claims that eBay violated the CAA, TSCA, and FIFRA. That illegal items were sold on eBay.com is not seriously disputed: the Complaint contains numerous screenshots of transactions documenting the sale of products that violate the CAA (Compl. ¶¶ 149, 154), TSCA (Compl. ¶¶ 182, 185, 189), and FIFRA (Compl. ¶¶ 197, 203, 210, 227, 230). The Complaint

alleges hundreds of thousands of illegal sales. Compl. ¶¶ 246 (CAA), 256 (TSCA), 261 (FIFRA),

269 (FIFRA SSURO). And, as explained below, eBay's extensive control over and involvement

in the transactions in its "marketplace" are sufficient to make it a seller and distributor in

commerce, an entity that offers for sale, and one that causes the sale of those illegal products.

A.     **eBay Violated the Clean Air Act**

1.     **eBay Sold Emissions Defeat Devices**

Because "sell" is not defined in the CAA, whether eBay "sell[s]" defeat devices turns on

the ordinary, common sense meaning of the word. *See, e.g., United States v. Dauray*, 215 F.3d

257, 260 (2d Cir. 2000). In simplest terms, to "sell" is to exchange something for money. *See*

*Black's Law Dictionary* (11th ed. 2019) (defining "sell" as "[t]o transfer (property) by sale" and

defining "sale" as "[t]he transfer of property or title for a price"); *Webster's Third New*

*International Dictionary* 2061 (1981) ("To give up (property) to another for money or other

valuable consideration"). This is what eBay does – it takes a consumer's money and, in return,

the consumer gets a product. eBay's role in the transaction is pervasive: the customer places the

selected item in the eBay shopping cart and provides eBay a credit card number on the eBay

checkout page, and eBay accepts the payment and pays the taxes. eBay then directs the third-

party merchant to send the product to the consumer. Compl. ¶¶ 108-14. Simply put, property is

transferred for a price. The process is remarkably similar – perhaps intentionally so – to buying a

product at Target or Home Depot, except it can be accomplished at home on a computer or

anywhere on a mobile phone.

The Complaint identifies other eBay actions that are indicia of its seller status. eBay

decides what products a consumer's search will retrieve and in what order they will be presented.

It actively markets products on its site, for example, by suggesting products to potential

purchasers, reminding purchasers to complete the purchase of items in their carts, and providing

9

them with coupons. It provides a money back guarantee in the event a product is not delivered. As a result of eBay's actions, consumers may purchase items that they did not initially intend to buy, from merchants that, without eBay, they never would have encountered. Compl. ¶¶ 111-12, 141-44. All of this – promoting the sale or influencing a purchase – is also "selling." *See Webster's Third New International Dictionary* at 2061-62 (defining "sell" to include "to cause or promote the sale of" and "to influence or induce to make a purchase").

The main premise of eBay's motion is that it "must own or possess an item to 'sell' it under the CAA."[2] Mem. at 7. But eBay points to nothing in the CAA itself to support a narrow definition of "sell." Instead, it relies on a Uniform Commercial Code definition, which states "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." UCC § 2-106(1). The UCC expressly provides, however, that it is not intended to "impair or repeal any statute regulating sales to consumers." UCC § 2-102. Looking to the UCC in this case, then, is inappropriate.

And perhaps more important, eBay provides no reason to suspect that Congress – which has not adopted the UCC on a federal level – intended such a limited definition. In fact, persons who "sell" defeat devices are just one of several entities Congress subjected to the CAA's prohibitions to keep vehicles that do not meet emissions standards off the road. It also includes those who "manufacture" "offer to sell," or "install" such devices, and the "causing thereof." 42 U.S.C. § 7522(a)(3)(B). A similarly broad list applies to manufacturers and importers of new motor vehicles. *Id.* § 7522(a)(1). The breadth of the categories demonstrates Congress's clear intent to cast a wide net of liability to prevent illegal – and harmful – products from reaching

---

[2] The dictionary definitions of "sell" also include "the transfer of possession or title for a price" or similar formulations. But it is only one of several meanings of the word. As discussed throughout, possession of or title to a product is not necessarily required to "sell" it.

consumers. Narrowly construing individual categories would create loopholes in this effort to protect the public, as eBay seeks to do here, and would be inconsistent Congress's broad purpose.

Moreover, eBay's use of a narrow definition of "sell" is inconsistent with the term's ordinary usage. For example, the Supreme Court itself has noted, "[in] common parlance, a person may offer or sell property without necessarily being the person who transfers title to . . . that property." *Pinter v. Dahl*, 486 U.S. 622, 642-43 (1988). In *Pinter*, the Supreme Court held that, under the Securities Act, a stockbroker can sell stock without owning it. *See id.* at 642-45. Apple sells third party apps on the App Store without owning them. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1519 (2019). A real estate broker can sell property without owning it, "the term 'sell' being synonymous with procuring a purchaser." *Watts v. Andrews*, 649 P.2d 472, 475 (N.M. 1982). An outside salesman makes sales by "persuad[ing] specific customers to sign up" for a purchase, "convinc[ing] them to buy" products, "using his skills to sell the product," and "obtain[ing] commitments to buy from customers" without holding or passing title. *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 229 (2d Cir. 2018). And "selling" is not limited to the transfer of property. For some insurance policies, the definition of "selling" in typical commercial settings includes "causing or promoting the sale of something or influencing or inducing a consumer to make a purchase." *Royal Ins. Co. of Am. v. Bos. Beer Co.,* No. 1:04cv2295, 2007 WL 1072166, at *8-9 (N.D. Ohio Apr. 5, 2007).[3] eBay's actions fit within these everyday uses of the term "sell." It "procures" purchasers for products; "obtains

---

[3] eBay dismisses these cases on grounds that it is "natural" to say an agent "sells" or "offers to sell." Mem. at 8. But eBay plays a greater role in transactions on ebay.com than do the sellers in these cases. One could just as easily conclude it is "natural" to say eBay is a seller. Moreover, none of these cases relies on principal/agent law to determine what the term "seller" means.

commitments" from consumers to purchase products; "persuades" and "convinces" them to make purchases; "influences" their decisions; and "promotes" products. Simply put, eBay sells.[4]

Courts have rejected the very argument that eBay makes here – that the transfer of title is necessary to determining whether an entity is a seller or distributor. Key to these decisions is the fact that eBay and its peers (e.g., Amazon) play an integral role in getting a product to the consumer. For example, *Loomis v. Amazon.com LLC*, 277 Cal. Rptr. 3d 769 (Cal. Ct. App. 2021), held that Amazon was liable for a defective product under California product liability law. In assessing Amazon's potential liability, the court highlighted Amazon's role in the transaction at issue: Amazon processed the payment; Amazon took a fee from the purchase price; Amazon handled refunds or disputes; and all communications between the merchant and the consumer had to go through Amazon. *Id*. at 773. Amazon also provided a guarantee. *Id*. at 774. The court noted that Amazon never had title to the product, nor did it possess or ship it. *Id.* at 774, 780. Still, the court rejected Amazon's argument that it was merely a marketplace, finding that it was an integral factor in bringing the product to market. *See id*. at 780-83. Given all that Amazon did as part of the transaction – the very things that eBay also does – the court denied Amazon's claim that it could not be liable because it was "not a manufacturer, seller, or supplier." *Id*. at 781-82.[5]

---

[4] eBay states that "[s]hipping companies connect buyers to sellers; banks and credit card companies process payments for a fee; advertising agencies and consultants help sellers reach a broader market" and "none of them amount to selling." Mem. at 11. But eBay's "common sense" analogy fails because eBay does all of these things *and more* – it even accepts payment for products. None of the other companies engage in such broad-ranging activity to effectuate sales.

[5] *Loomis* is not alone. In *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 390 F. Supp. 3d 964, 972 (W.D. Wis. 2019), the court held that Amazon could be liable as a seller under Wisconsin's strict liability laws. In this case the consumer purchased the product in question not because he searched specifically for it, but because Amazon showed it to him in a section of items "frequently bought together." *See id*. at 967. Amazon accepted payment; provided a guarantee; and promised to handle disputes. *Id*. The court noted that "Amazon took on all the

The cases that eBay cites to support its position that an online "marketplace" cannot be liable for products sold on its site are inapplicable. In *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135 (4th Cir. 2019), the issue in the case was whether Amazon was responsible, under Maryland product liability law, as a seller of a defective item. The court focused on whether Amazon had title to the product at issue and passed it to the buyer. *See id.* at 141. But it did so because Maryland had a specific statute that defined "seller" to mean an actor that passes title. *See id.* (citing Md. Code, Com. Law § 2-106 (defining a "sale" as "the passing of title from the seller to the buyer for a price")). Because Amazon never held title to the product, the court concluded that it could not be held liable under Maryland law for any of its defects. *See id.* at 144.[6]

eBay also mis-states *Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124 (D. Utah 2019), for the proposition that, to "sell" a product, the "seller" must have title or possession of the product. Mem. at 7. The court found, after trial, that the defendant was liable for selling defeat devices even though the defendant "did not own any of the parts it was selling." *See Utah Physicians for a Health Env't v. Diesel Power Gear LLC*, No. 2:17-cv-

---

roles of a traditional – and very powerful – reseller/distributor." *Id*. at 972. Amazon did not hold title to the product. *Id*. at 967. While Amazon stored the product in its warehouse and shipped it to the consumer, that fact was not determinative. *See id*. Other courts have also reached the same conclusion employing much the same reasoning. *See, e.g., State Farm Fire & Cas. Co. v. Amazon.com Serv., Inc.*, 137 N.Y.S.3d 884 (N.Y. Sup. Ct. 2020).

[6] Products liability cases are also distinguishable from this case on public policy grounds. Underlying product liability law is the desire to make consumer products safe. *See, e.g., Bolger v. Amazon.com, LLC*, 267 Cal. Rptr. 3d 601, 612-14 (Cal. Ct. App. 2020) (discussing the development of product liability law). These concerns led legislatures and courts to focus liability on the actors that were in the best position to ensure product safety – manufacturers and those that have or pass title. *See id.*; Catherine M. Sharkey, *Products Liability in the Digital Age: Online Platforms as "Cheapest Cost Avoiders,"* 73 Hastings L.J. 1327, 1330-34 (2022). The policy concerns driving product prohibitions in public health and safety laws are different – their purpose is to keep deleterious items off the market. Exempting e-commerce sites that play a substantial role in bringing the illegal products to market from the statutory prohibitions – without specific legislative intent to the contrary – would frustrate this policy goal.

00032-RJS-DBP, 2020 WL 4282148, at *9, *17 (D. Utah, Mar. 6, 2020), *aff'd in part, rev'd in part on other grounds,* 21 F.4th 1229 (10th Cir. 2021). Nor did the defendant possess any of the parts – a third party fulfilled the order. *Id*. That is, the court found that the defendant was a seller even though – like eBay – it never owned or possessed any of the defeat devices it sold.

Next, *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 97 (2d Cir. 2010), does not help eBay. Although the court did state that eBay "does not itself sell items listed for sale on the site," this statement was based on facts about eBay that have changed in the dozen years since that case was litigated – specifically, the district court's factual finding that "[w]hen a buyer purchases an item, *the buyer and seller contact each other to arrange for payment and shipment* of the goods." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 475 (S.D.N.Y. 2008) (emphasis added). The Second Circuit's statement that eBay does not sell items was thus based on at least one critical fact that is no longer true. eBay's current practice – the practice at issue in this case – requires the buyer to pay *eBay.* Compl. ¶ 109. In fact, buyers and third-party merchants are now *prohibited* from contacting one another to purchase items listed on ebay.com.[7] Compl. ¶ 131. In addition, while it did not find that eBay was a seller, the Second Circuit nonetheless accepted the district court's conclusion (which eBay did not dispute on appeal) that eBay exercised sufficient control over transactions to make it potentially liable for the sale of counterfeit jewelry on its site, a finding that is in line with the government's argument here. *See Tiffany*, 600 F.3d at 105.[8]

---

[7] Discovery is likely to show other changes to eBay's business model relevant to eBay's control over the transaction since *Tiffany* and other cases from that era were decided.

[8] eBay relies too heavily on intellectual property cases in the same way that it relies too heavily on product liability cases. One of the main goals of intellectual property law is get new products and ideas into the market. *See, e.g., Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (discussing copyright). The main goal of the statutes at issue here is to keep products off the market. How courts treat potential violations of intellectual property laws should, therefore, be different from how courts treat potential violations of the CAA.

eBay's reliance on the INFORM Act, which requires online marketplaces to gather information from certain "third party seller[s]" that sell products on their sites, *see* 15 U.S.C. § 45f(a), is similarly unavailing. The Act defines "third party seller" as independent of an online marketplace, *id*. § 45f(f)(6)(A), leading eBay to argue that Congress recognized that an online marketplace is not itself a seller. eBay fails to note, however, that, in the next line of the statute, Congress excludes from the information gathering requirement "a seller who operates the online marketplace's platform." *Id*. § 45f(f)(6)(B)(i). That is, Congress explicitly recognized that an entity can be *both* an online marketplace *and* a seller. It is not one or the other, as eBay would have this Court believe.

### 2.    eBay "Offered to Sell" Emissions Defeat Devices

The Government's complaint also alleges that eBay offered to sell emissions defeat devices. To "offer" a product for sale is "to present for acceptance or rejection." *See, e.g., Webster's Third New International Dictionary* 1566. That is exactly what eBay does. The Complaint provides numerous screenshots of products presented for purchase on ebay.com. *See* Compl. ¶¶ 149, 154, 189, 197. eBay does not just provide a compendium of products available from others. eBay also commits to accept the consumer's payment, pay sales taxes, guarantee shipment, and resolve any disputes with the merchant. All of that comprises eBay's "offer" to consumers.

eBay contends that it does not make an "offer to sell" an item because it cannot sell the item, which in eBay's formulation requires the transfer of ownership or possession. That contention fails. As discussed above, the CAA does not require the transfer of title or possession for a sale to exist. But even more fundamentally, nothing in the definition of "offer" requires the

offeror to be capable of consummating a sale at the time of the offer. *See, e.g., Pinter*, 486 U.S. at 642-43 (a person may "offer" to sell property without transferring title).[9]

### 3. eBay "Caused" the Sale of Emissions Defeat Devices

eBay not only sold unlawful products under the CAA, it also "caused" such sales within the ordinary, common-sense meaning of the word. "Cause" means something that brings about an effect or a result. *See, e.g., Webster's Third New International Dictionary* 356 ("a person . . . that brings about an effect or that produces or calls forth a resultant action or state"). Synonyms include "prompt," "encourage," "promote," and "bring about." *See, e.g., Cause, Merriam-Webster Thesaurus, merriam-webster.com/thesaurus/cause*.

The dictionary definition of "cause" along with common synonyms for the term make clear that eBay is a "cause" of sales. Indeed, eBay would not be the company it is today if it did not cause sales. As discussed above, eBay provides substantial assistance to third-party merchants in creating product listings, in marketing the products, and in taking advantage of the vast amounts of commercial data it collects; it directs consumers towards products that eBay wants them to see, even towards products that consumers may not originally have planned to purchase; it targets them with unsolicited emails and ads, even when they are not on eBay's site; it takes their money and, in return, ensures that they get the product they paid for; it prevents them from buying something from a merchant unless they do so on eBay itself. eBay is causing a

---

[9] *Blazer v. eBay, Inc.*, No. 1:15-CV-01059-KOB, 2017 WL 1047572 (N.D. Ala., Mar. 20, 2017), cited by eBay for the proposition that eBay's listings are not offers to sell, does not resolve the issue. First, the court noted conflicting authority on whether the lack of title to a product meant that an entity like eBay was not "offering to sell" the product. *See id*. at *4 (comparing *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932-RSM, 2015 WL 4394673, at *14 (W.D. Wash. July 16, 2015), and *Alibaba.com Hong Kong LTD v. P.S. Prod., Inc.*, No. C 10-04457-WHA, 2012 WL 1668896, at *3 (N.D. Cal. May 11, 2012), where passing title was not deemed necessary). Second, the court found that the "entire context of the exchange" must be considered to determine whether an offer is being made and highlighted the fact that there was no evidence in the record before it that a purchaser paid eBay directly. *See id*. eBay's current business model, at issue in this case, *requires* customers to pay eBay directly.

sale – it brings that sale about as it prompts, if not encourages, merchants and consumers to conduct their transaction.[10]

Even using eBay's (too limited) definition of cause – *i.e.,* to induce or direct – eBay causes sales of prohibited defeat devices. eBay does not simply facilitate sales. eBay actively participates in and shapes all the transactions on its site. eBay's role in creating product listings; manipulating a consumer's search results; pushing "related products," "similar sponsored items," and "sponsored items based on your recent views"; sending coupons; and following a consumer

---

[10] The tort concept of "cause" is helpful here. An actor is responsible – as a legal "cause" – for the "harms that result from the risks that made the actor's conduct tortious." Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 29 (2010). As the harm in this case is the sale of illegal products, eBay's conduct risks that very harm. Moreover, the common law held that to "cause" a harm was to be "a substantial factor in bringing it about." Restatement (Second) of Torts § 431 (1965). The only reported CAA case to address the word "cause" took a similar approach. *See United States v. NGL Crude Logistics, LLC*, No. 16-CV-1038-LRR, 2017 WL 2268324, at *7 (N.D. Iowa May 24, 2017) (ordinary meaning of "cause" is to "bring about or effect"). This formulation of "cause" exemplifies eBay's role in a purchase. Put simply, eBay is a substantial factor – if not the key factor – in bringing about sales on ebay.com. The tort concept of "aiding and abetting" could also be helpful. Although "causing" and "aiding and abetting" are not synonymous, they are related in that they seek to define when the law will hold an actor responsible for something that someone else does. The Supreme Court recently examined the contours of aiding and abetting liability when it addressed whether social media companies aided and abetted a terrorist attack. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). The Court undertook an extensive analysis of what it means to "aid and abet" in the common law. *See id*. at 484-93. Distilled to its essence, to aid and abet means to participate in an act "so as to help 'make it succeed.'" *Id*. at 493 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)). The actor must take an affirmative act "with the intent of facilitating" the violative conduct. *Id*. at 490 (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Even giving verbal encouragement from the sideline could be enough (like yelling, "Do it!"). *See id*. at 492. Looking at "causing" through an "aiding and abetting" lens it is – once again – clear that eBay is causing sales. It is doing much more than encouraging sales from the sideline; it is ensuring that sales succeed by, among other things, putting merchants together with consumers all over the world, accepting payments, paying sales taxes, guaranteeing product delivery, and providing shipping discounts. It even emails illegal product listings to customers and implores them to purchase the items.

all over the web are just a few examples of the kind of inducement or direction eBay engages in.[11]

In any event, there is no explicit (or, for that matter, implicit) basis in the statutory language to suggest that Congress intended "causing" to just mean inducing or directing. To be sure, causing can mean inducing or directing, but as discussed above it also means "prompting," "encouraging," "promoting," and "bringing about." It also means facilitating. *Cf., Taamneh*, 598 U.S. at 490. eBay is thus inviting this Court to imply a limitation that lacks textual support.

eBay's suggestion that it no more causes sales than Craigslist causes the ads on its site, relying on *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc.* v. *Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), is unsupportable. *Cf.* Mem. at 15. As reported by the court, Craigslist's business model is much different from eBay's. The court likened Craigslist postings to the classified ads in a newspaper. *See id.* at 668, 671-72. Like a newspaper, Craigslist simply publishes ads – like a listing for a used car or a room to sublet – and it does nothing more, leaving all the steps to any transaction for the merchant and the consumer. There is no indication that it involved itself in the postings – let alone the transactions themselves – in any way that is even remotely like the way that eBay involves itself in every sale on its site. Craigslist's conduct hardly fits the allegations against eBay "like a glove." *See* Mem. at 15. Unlike Craigslist, eBay

---

[11] eBay suggests that the United States is misreading the "causing thereof" provision of the CAA by focusing its attention on whether eBay causes a buyer – as opposed to a third-party merchant – to act. Mem. at 16. Not so. First, much of the conduct eBay engages in to cause a CAA violation is directed at the third-party merchants. eBay's role in creating product listings, making them effective for the merchant, pushing the merchant's products on consumers, and processing the payments, among other things, are all designed to induce a merchant to sell products on eBay. Second, to the extent that eBay's conduct causes a buyer to purchase an item, that conduct, by its very nature, also causes a merchant to sell. Without a buyer there is not a sale, and without a sale there is not a violation of the CAA's "sell" provision. After all, a merchant is not selling unless someone is buying. eBay causes all of that to happen.

itself handles all, or very nearly all, of the steps to any transaction on behalf of the merchant and the consumer.

### 4. eBay Knew or Should Have Known That It Was Selling Emissions Defeat Devices

eBay contends that the Complaint does not plausibly allege that eBay "knew or should have known" that the devices sold on ebay.com were sold for the purpose of defeating emissions control systems. eBay is incorrect. The Complaint provides specific examples of illegal products sold on eBay.com associated with listings that specify – on their face – the illegal purpose of the product. *See* Compl. ¶¶ 149 ("Ford Powerstroke 6.4 2008-2010 EGR *DPF Delete Kit* x4 7015 Race Tuner Programmer"), 154-55 ("2011-2019 Ford 6.7 EGR Delete *DPF Delete Kit* Package Competition Tuner," also described in the listing as a "COMPLETE DELETE PACKAGE"), 171 (referencing listings identifying the deleterious effect of the products on vehicle emissions controls, such as "This plate eliminates the recirculation of exhaust gas into the intake," "DPP/ERG/DEP delete capable," "DPP Delete Programmer," and "Throttle Valve Delete Kit"). If listings on its own website showed on their face that products were defeat devices, eBay can hardly claim it did not know – or should not have known – that they were selling defeat devices.

eBay cites the *Tiffany* and *Hartmann v. Amazon.com* cases for the proposition that courts have "repeatedly rejected the theory that an online platform may be charged with knowledge of the details of every listing on the site." Mem. at 18. But the cases are distinguishable. In *Tiffany*, the court focused on the fact that eBay had only a "general knowledge" that its site might be selling counterfeit products. *See Tiffany*, 600 F.3d at 107. The plaintiff did not establish that eBay had "particular" information about specific listings that offered counterfeit goods. *See id.* Similarly, the court in *Hartmann* noted that the allegations in the complaint were about the "generic capabilities" that Amazon might have been able, in theory, to use to figure out that films

sold on its site were owned by the plaintiff. *See Hartmann v. Amazon.com, Inc.*, 20 Civ. 4928 (PAE), 2021 WL 3683510, at *7 (S.D.N.Y. Aug. 19, 2021). The results in these cases would no doubt have been different if the nature of the products were apparent on the face of the listing – if, for example the listing in *Tiffany* was for a "counterfeit necklace" or in *Hartmann* was for a "bootleg movie."[12] Here, the products' illegality is on the face of the listings for all to see.[13]

In addition, it is not just third-party listings that are at issue here. eBay itself sent emails, for instance, promoting illegal products. *See* Compl. ¶ 243. Surely, eBay is not suggesting that it did not know the details of its very own emails.

## B. eBay Distributed in Commerce Methylene Chloride Containing Products in Violation of TSCA

The Complaint also states plausible claims that eBay violated TSCA's Methylene Chloride Rule, which provides that "all retailers are prohibited from distributing in commerce methylene chloride" or products that contain methylene chloride for paint and coating removal. 40 C.F.R. § 751.105(c). Both TSCA and the Methylene Chloride Rule define the phrase "distribute in commerce" as "to sell . . . in commerce; to introduce or deliver for introduction into commerce . . . ; or to hold [an item] . . . after its introduction into commerce." 15 U.S.C. §

---

[12] eBay cites *Omega SA* v. *375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021), for the proposition that its "bona fide efforts to root out trademark infringement . . . supported a finding of no liability." To the extent eBay is suggesting there is a parallel to this case, the proposition should be rejected. The sheer volume of violations alleged in the complaint belie any "bona fide efforts" to prevent illegal sales. Illegal sales of pesticides, for example, continued even after EPA issued eBay a Notice of Violation, Compl. ¶ 165, and a SSURO to cease sales of specific products. In any event, whether eBay took appropriate action to stop the sale of illegal defeat devices and the penalty that should be assessed if they failed to do so cannot be resolved at the pleading stage.

[13] eBay's apparent concern is that it thinks it is too hard to monitor what it is selling on its website. *See* Mem. at 18 (referencing the large volume of listings on ebay.com, purportedly forcing the company "to rely heavily on automated filtering systems to try to catch prohibited listings"). But this is a factual issue that does not relate to the sufficiency of the Government's complaint. And it implies that eBay is too big to be expected to comply with the law. Such an implication should be rejected out of hand.

2602(5); 40 C.F.R. § 751.103. The actions eBay takes to sell methylene chloride products on ebay.com constitute a "sale" or "offer to sell" those products under TSCA just as the conduct discussed above constitutes the "sale" or "offer to sell" of defeat devices under the CAA. *See supra* pp. 9-16.[14]

No caselaw has discussed the meaning of "introduce or deliver for introduction into commerce" as part of the definition of "distribute in commerce" in TSCA, but cases have discussed the meaning of the phrase in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). The FDCA is similar to TSCA in that it is intended to protect the public from harmful products. *See Barnes v. United States*, 142 F.2d 648, 651 (9th Cir. 1944). Cases that have interpreted the term "introduce or deliver for introduction" in the FDCA have interpreted it broadly to accomplish that purpose. For instance, in *Barnes* the court analyzed whether the term "introduce or deliver for introduction" extended to the entities that did not arrange for the delivery of regulated products but were only acting as "bailees" of the products. *Id.* at 650. The court concluded that the "broad language of the statute . . . . *includes the whole transaction* of which such transporting is a part . . . and cannot be qualified or avoided by the technicalities of the law of sales regarding passing of title." *Id.* at 650–51 (emphasis added). That

---

[14]To distribute in commerce also means "the sale of" a product. 15 U.S.C. § 2602(5); 40 C.F.R. § 751.103. Because the phrases "to sell" and "the sale of" are listed separately, they normally should mean two different things, otherwise one or the other phrase would be surplusage. *See, e.g., United States v. Jones*, 965 F.3d 190, 194-95 (2d Cir. 2020). The natural reading of the two phrases means that the phrase "to sell," in the active voice, refers to the actor who is selling and the phrase "the sale of," in the passive voice, refers to some actor other than the seller. The "[p]assive voice pulls the actor off the stage." *Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023). Using the passive voice, Congress is concerned with the sale but agnostic about who did the selling. *See id.* at 75-76. That is, Congress extends responsibility for the sale beyond the seller itself. *See id.* Granted, the context of the statutory language will confine those responsible to a likely set of actors. *See id.* But given the context, the likely set of actors here must include an actor that, like eBay here, was instrumental in the sale happening, regardless of whether eBay is considered a seller. Simply, eBay was involved in "the sale of" methylene containing products.

accords with how, in *United States v. Sullivan,* the Supreme Court noted that the mechanism by which the FDCA protects the consuming public is by "applying the Act to articles from the moment of their introduction into interstate commerce all the way to the moment of their delivery to the ultimate consumer." 332 U.S. 689, 696 (1948). Applying this rationale to TSCA, eBay's key role in making methylene chloride-containing products available to the ultimate consumer constitutes an "introduction into commerce" within the meaning of the law.[15]

eBay is also a "retailer" under TSCA. A "retailer" is someone who "distributes in commerce or makes available a chemical substance or mixture to consumer end users, including e-commerce internet sales or distribution." 40 C.F.R. § 751.103. For reasons noted above, eBay "distributes in commerce." It also "makes available" the products at issue here, a phrase that eBay ignores in arguing that it is not a "retailer." No one can dispute that eBay makes products available.

C.    eBay Distributed or Sold Illegal Pesticides in Violation of FIFRA

eBay also "distributed or sold" illegal pesticides, in violation of FIFRA, a 2020 SSURO, and a 2021 SSURO amendment. Compl. ¶¶ 261, 269; *see* 7 U.S.C. §§ 136a(a), 136j(a), 136k. FIFRA defines the phrase "distribute or sell" to mean "to distribute, sell, [and] offer for sale" among other actions. 7 U.S.C. § 136(gg). The actions eBay takes to sell pesticides on ebay.com constitute a "sale" or "offer to sell" those products under FIFRA just as the conduct discussed above constitutes the "sale" or "offer to sell" of defeat devices under the CAA. *See supra* pp. 9-16.

---

[15] eBay's contention that "introduce into commerce" applies only to the first transaction involving a product, Mem. at 21, is not required by the definition of "introduce" it cites (which says only "*especially* the first time") or the Supreme Court case it relies upon, *United States v. Twenty-Five Packages of Pan. Hats*, 231 U.S. 358, 362 (1913), which does not discuss whether transactions that occur after arrival at a customs warehouse can also constitute "introduce into commerce."

**D.**     **The Broad Wording and Clear Purpose of the Relevant Statutes Show that Congress Intended for Entities like eBay to be Covered by Them**

The words and phrases that surround "sell" and "distribute" and the structure of the statutes confirm that eBay is covered by the relevant provisions of the CAA, TSCA, and FIFRA. *See, e.g., Dauray*, 215 F.3d at 262-64.   As noted, under the CAA, it is not just sellers who can be held liable for defeat devices, it is also manufacturers, people who offer to sell, installers, and anyone who causes such activity. Under TSCA, sellers of methylene chloride containing products are joined with distributors, those who introduce the products into commerce, and even those who hold the products once they are in commerce. And FIFRA speaks of those who simply hold for sale or release for shipment.

It would be an odd, even absurd, result to interpret the CAA, TSCA, or FIFRA to allow eBay to slip through a hole in the wide net of liability that Congress cast. Congress does not want the products at issue here to be on the market at all; the language of the statutes makes that clear. It thus drafted the relevant liability provisions to cover every entity that plays a part in putting these products on the market. eBay plays such a part; in fact, it plays an integral part.

Nor does anything in any of the statutes suggest, let alone state, that Congress intended to exclude an entity from liability simply because that entity does not hold title to the illegal product. And it is hard to articulate a principled reason why such an exclusion would make sense, given the all-encompassing wording of the statutes. In other words, eBay is asking the Court to read a limitation into the statutes that is inconsistent with their explicit language and clear purpose.

**II.     The Communications Decency Act Does Not Immunize eBay's Illegal Conduct**

Section 230 of the Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any

information provided by another information content provider." 47 U.S.C. § 230(c)(1). By its terms, therefore, Section 230 bars only claims that seek to "treat[]" a website provider as "the publisher or speaker" of third-party content. *Id.*

eBay's invocation of the CDA fails because the claims at issue do not ask this Court to treat eBay as the publisher or speaker of content created and posted by others, but rather seek to hold eBay liable for its "*own*" conduct in selling products in violation of environmental protection statutes. *See Federal Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 176-77 (2d Cir. 2016). *Force v. Facebook, Inc.*, 934 F.3d 53, 64-66 (2d Cir. 2019), therefore does not aid eBay; in that case, the Second Circuit found that claims sought to "treat[]" Facebook as the publisher of third-party content where they were based on Facebook's hosting of that third-party content and its use of algorithms that "organiz[ed] and display[ed]" that content.   Here, by contrast, the Complaint alleges that eBay assists in the drafting of the product listing,[16] actively markets the listings, restricts independent communications between buyers and third-party merchants, accepts payment for products, takes a fee, pays sales taxes, handles disputes, and guarantees shipment. eBay's pervasive control over every aspect of the transaction on its website

---

[16] eBay's participation in the drafting of listings – providing stock photos and other product information through the eBay Catalog, Compl. ¶ 96, providing sales metrics, consumer search data, product description tools, competitor pricing, and marketing and promotional tools through the "Seller Hub," Compl. ¶¶ 105-06, and designating certain items as eBay "sponsored" or "related" products, Compl. ¶¶ 138, 140 – is an independent basis to deny Section 230 immunity. It makes eBay an "information content provider," an entity "responsible, in whole *or in part*, for the creation or development of information" published on the internet. 47 U.S.C. § 230(f)(3) (emphasis added). While eBay may have valid business reasons for its involvement in the content of listings on its site – after all attractive listings inevitably draw more purchasers – Section 230 does not protect eBay from being held accountable for its own role in creating and developing content. 47 U.S.C. § 230(c)(1) (barring claims that seek to hold a website liable as the "publisher or speaker" of "information provided by *another* information content provider") (emphasis added).

makes it a seller of products regulated under the federal health and safety statutes at issue, and the claims here seek to hold eBay liable in that role.

This distinction is recognized in the case law. In *Erie*, for example, the court examined Amazon's online sales platform and found that "[w]hile the Communications Decency Act protects interactive computer service providers from liability as a publisher of speech, it does not protect them from liability as the seller of a defective product." 925 F.3d at 139-40; *see also State Farm*, 390 F. Supp. 3d at 973-74 ("Amazon's active participation in the sale . . . is not activity immunized by the CDA."); *Bolger,* 267 Cal. Rptr. 3d at 626 (claim based on "Amazon's own involvement in the distribution of an allegedly defective product" not barred by Section 230). Similarly, the Second Circuit has recognized that Section 230 does not apply to bar claims that are premised on a website's direct participation in an unlawful scheme. *See LeadClick Media*, 838 F.3d at 175. As in these cases, Section 230 does not protect eBay from liability for its own acts of selling illegal products.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny eBay's Motion to Dismiss.[17]

---

[17] eBay suggests that the Court's authority to "restrain" violations of the CAA, TSCA, and FIFRA does not include the authority to order mitigation. Mem. at 25 n.7. The Court need not decide that issue now. In any event, once a statute invokes a court's equity jurisdiction, which "restrain" does, a court is afforded its traditional equitable powers. *See, e.g., Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1942-44 (2020) (discussing disgorgement); *Porter v. Warner Holdings Co.*, 328 U.S. 395, 398 (1946) (noting that unless specifically curtailed by Congress, "all the inherent equitable powers of the District Court are available for the proper and complete exercise of [its] jurisdiction"); *see also United States v. Lane Labs-USA Inc*, 427 F.3d 219, 223-26 (3d Cir. 2005) (interpreting "restrain" in the FDCA to invoke a court's broad equitable powers). Mitigation is one such power. *See, e.g, United States v. Cinergy Corp.*, 582 F. Supp. 2d 1055, 1058-66 (S.D. Ind. 2008).

Respectfully submitted,

Dated: January 26, 2024

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

_/s/ James D. Freeman_____
JAMES D. FREEMAN
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202

BREON PEACE
United States Attorney
Eastern District of New York

/s/ Michael S. Blume
MICHAEL S. BLUME
PAULINA STAMATELOS
Assistant United States Attorneys
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

OF COUNSEL

CAITLIN MEISENBACH
N. LINDSAY SIMMONS
ADRIENNE TRIVEDI
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20004