**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| *Plaintiff*, | ) |
| v. | ) |
| | ) |
| EBAY INC. | ) |
| | ) |
| *Defendant*. | ) |

Case No. 1:23-cv-07173-OEM-LB

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Stacie Fletcher (admitted *pro hac vice*)
Rachel Levick (admitted *pro hac vice*)
Mia Donnelly (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER
1050 Connecticut Avenue NW
Washington, DC 20036

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

Jeffrey B. Wall (admitted *pro hac vice*)
Zoe A. Jacoby (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006

Laura Kabler Oswell (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, CA 94301

*Counsel for Defendant eBay Inc.*

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..........................................................................................................3

    A.    Factual Background ......................................................................................3

    B.    Procedural Background..................................................................................5

ARGUMENT ..............................................................................................................5

I.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY
    VIOLATED THE CLEAN AIR ACT ..............................................................6

    A.    The Complaint Does Not Allege An Unlawful Act..................................6

        1.    eBay did not "sell" defeat devices ............................................ 7

        2.    eBay did not "offer to sell" defeat devices ............................... 12

        3.    eBay did not "caus[e]" any person to sell or offer to sell defeat
            devices.................................................................................... 13

    B.    The Complaint Does Not Allege Scienter ..........................................17

II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY
    VIOLATED THE FEDERAL INSECTICIDE, FUNGICIDE, AND
    RODENTICIDE ACT....................................................................................18

III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY
    VIOLATED THE TOXIC SUBSTANCES CONTROL ACT OR THE
    METHYLENE CHLORIDE RULE ................................................................20

IV.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT
    INDEPENDENTLY BARS THE GOVERNMENT'S CLAIMS ....................22

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc.* v. *McMillan*,
  625 S.W.3d 101 (Tex. 2021) ..................................................................9

*Blazer* v. *eBay, Inc.*,
  2017 WL 1047572 (N.D. Ala. Mar. 20, 2017) ....................................12

*Bond* v. *United States*,
  572 U.S. 844 (2014) ............................................................................22

*Butler* v. *eBay Inc.*,
  2006 WL 8442955 (N.D. Cal. Dec. 13, 2006) ....................................11

*Dart* v. *Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ..............................................15, 17

*DiFolco* v. *MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ..................................................................3

*Erie Insurance Co.* v. *Amazon.com, Inc.*,
  925 F.3d 135 (4th Cir. 2019) ............................................................9, 11

*Estate of Graham* v. *Sotheby's Inc.*,
  178 F. Supp. 3d 974 (C.D. Cal. 2016) ................................................10

*Flood* v. *Just Energy Mktg. Corp.*,
  904 F.3d 219 (2d Cir. 2018) ..................................................................8

*Force* v. *Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ......................................................22, 23, 24

*FTC* v. *LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016) ................................................................23

*Hartmann* v. *Amazon.com, Inc.*,
  2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ....................................18

*Inman* v. *Technicolor USA, Inc.*,
  2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ....................................10

*Liebhart* v. *SPX Corp.*,
  2020 WL 6999229 (W.D. Wis. Feb. 7, 2020) ....................................25

*Loomis* v. *Amazon.com LLC*,
277 Cal. Rptr. 3d 769 (Ct. App. 2021) ................................................................10

*Mazur* v. *eBay Inc.*,
2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ........................................................23

*Milo & Gabby LLC* v. *Amazon.com, Inc.*,
693 Fed. Appx. 879 (Fed. Cir. 2017) ..................................................................8

*Morrison* v. *National Australia Bank Ltd.*,
561 U.S. 247 (2010) ............................................................................................20

*Omega SA* v. *375 Canal, LLC*,
984 F.3d 244 (2d Cir. 2021) ................................................................................18

*Payton* v. *Kale Realty, LLC*,
164 F. Supp. 3d 1050 (N.D. Ill. 2016) ................................................................15

*Pinter* v. *Dahl*,
486 U.S. 622 (1988) .......................................................................................8, 13

*Rosen* v. *eBay, Inc.*,
2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ....................................................16

*Rotec Indus., Inc.* v. *Mitsubishi Corp.*,
215 F.3d 1246 (Fed. Cir. 2000) ..........................................................................12

*Royal Ins. Co. of Am.* v. *Bos. Beer Co.*,
2007 WL 1072166 (N.D. Ohio Apr. 5, 2007) ......................................................8

*State Farm Fire & Casualty Co.* v. *Amazon.com, Inc.*,
390 F. Supp. 3d 964 (W.D. Wis. 2019) ................................................................9

*State Farm Fire & Casualty Company* v. *Amazon.com Services, Inc.*,
137 N.Y.S.3d 884 (N.Y. Sup. Ct. 2020) ..............................................................9

*Stoner* v. *eBay Inc.*,
2000 WL 1705637 (Cal. Super. Ct. Nov. 1, 2000) ........................................11, 23

*Taniguchi* v. *Kan Pac. Saipan, Ltd.*,
566 U.S. 560 (2012) ..............................................................................................7

*Tiffany (NJ) Inc.* v. *eBay, Inc.*,
576 F. Supp. 2d 463 (S.D.N.Y. 2008) ............................................................10, 22

*Tiffany (NJ) Inc.* v. *eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) ..........................................................................1, 10, 18

*Twitter, Inc.* v. *Taamneh*,
    598 U.S. 471 (2023) .......................................................................................24

*Underwood* v. *Coinbase Glob., Inc.*,
    654 F. Supp. 3d 224 (S.D.N.Y. 2023) ...............................................................3

*United States* v. *Chalaire*,
    316 F. Supp. 543 (E.D. La. 1970) ...........................................................14, 16

*United States* v. *Twenty-Five Packages of Panama Hats*,
    231 U.S. 358 (1913) .......................................................................................21

*Utah Physicians for a Healthy Env't* v. *Diesel Power Gear LLC*,
    374 F. Supp. 3d 1124 (D. Utah 2019) ...............................................................7

*Watts* v. *Andrews*,
    649 P.2d 472 (N.M. 1982) ...............................................................................8

**Statutes**

7 U.S.C. § 136a ..........................................................................................................18

7 U.S.C. § 136j .....................................................................................................2, 18

7 U.S.C. § 136k ..................................................................................................18, 19

7 U.S.C. § 136n ..........................................................................................................25

15 U.S.C. § 45f ...........................................................................................................11

15 U.S.C. § 77b ...........................................................................................................13

15 U.S.C. § 78u-2 .......................................................................................................14

15 U.S.C. § 2602 ....................................................................................................2, 21

15 U.S.C. § 2605 ....................................................................................................2, 20

15 U.S.C. § 2614 .........................................................................................................21

15 U.S.C. § 2616 .........................................................................................................25

21 U.S.C. § 843 ...........................................................................................................14

28 U.S.C. § 2462 ...........................................................................................................6

42 U.S.C. § 7522 ................................................................................................. *passim*

42 U.S.C. § 7523 .........................................................................................................25

42 U.S.C. § 13361 ..........................................................................................................14

47 U.S.C. § 230 ....................................................................................................2, 22, 23, 24

49 U.S.C. § 80302(b) ....................................................................................................14

**Other Authorities**

40 C.F.R. § 751.103 ............................................................................................21, 22

40 C.F.R. § 751.105 ........................................................................................2, 20, 21

*Black's Law Dictionary* (11th ed. 2019) ...................................................7, 12, 19, 22

*Control of Emissions from Nonroad Spark-Ignition Engines and Equipment*,
    73 Fed. Reg. 59034, 59135 (Oct. 8, 2008) ...........................................................17

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ........................................21

*New Shorter Oxford English Dictionary* (4th ed. 1993) .............................................13

Restatement (Second) of Contracts § 24 (1979) .........................................................12

Restatement (Second) of Torts § 431 (1965) ..............................................................14

Uniform Commercial Code § 2-106(1) ........................................................................7

*Webster's Third New International Dictionary* (3d ed. 1993) ................................13, 19

## PRELIMINARY STATEMENT

This holiday season, millions of Americans purchased gifts for loved ones on the online marketplace eBay.com.  They browsed listings from all kinds of sellers—from individuals and craft enthusiasts to online small businesses.  After agreeing to a deal, and with eBay's support on payment and logistics, the seller shipped the buyer the item.  For each transaction, as the Complaint itself recognizes, eBay was a "marketplace" that provided "assistance" to its "participants" who were the "buyers and sellers."  Compl. ¶¶ 87, 94.  eBay was never itself a *seller*.  The seller was the person who held the item, decided to sell it, posted a listing that described it, chose to accept the buyer's offer, agreed to transfer the good for a price, and shipped it to the buyer.  eBay is a pure third-party, peer-to-peer online marketplace.

The Government's attempt to extend the Clean Air Act (CAA); Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA); and Toxic Substances Control Act (TSCA) to products sold by others on eBay's marketplace would constitute an unprecedented expansion of those statutes, all of which regulate only traditional sellers and distributors.  When private plaintiffs have tried to hold eBay liable under similar theories, courts—including the Second Circuit—have rejected the argument.  *See, e.g.*, *Tiffany (NJ) Inc.* v. *eBay Inc.*, 600 F.3d 93, 112, 114 (2d Cir. 2010) (eBay did not infringe or dilute Tiffany's trademark in large part because "eBay did not itself sell" the relevant goods).  Rather than seek action from Congress, the Government instead asks this Court to contravene established precedent and ignore the plain meaning of statutory text.

The Court should decline that invitation.  Starting with the CAA, the statute prohibits "sell[ing]," "offer[ing] to sell," or "causing . . . any person" to sell or offer to sell defeat devices.  42 U.S.C. § 7522(a)(3)(B).  Under the ordinary meaning of the term, "selling" means transferring ownership or possession of an item.  The Complaint does not allege that eBay ever held title to or possessed the alleged item, and with good reason: for each transaction, an *actual seller* owned or

possessed the item, and transferred it to the buyer for a price.  "Offering to sell" likewise means manifesting a willingness to sell, and for much the same reason, the Complaint does not allege that eBay did that either.  Nor does the Government adequately allege that eBay "caus[ed]" the actual sellers to sell or offer to sell defeat devices.  Merely providing a platform does not cause anyone to list or sell an unlawful product.

The Government's claims under the other two statutes fare no better.  FIFRA makes it unlawful to "distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver" certain pesticides, 7 U.S.C. §§ 136j(a)(1), 136(gg), and TSCA prohibits "retailers" from "distribut[ing] in commerce" certain products containing methylene chloride, 15 U.S.C. §§ 2602(5), 2605(a); 40 C.F.R. § 751.105(c).  All of those operative terms—holding, receiving, distributing, and so on—require, at a minimum, possession or control of the item.  eBay has neither.  No court has held an online marketplace liable in similar circumstances under these or other comparable "seller" statutes.  The Government's novel theory is literally unprecedented.

Even accepting the extraordinary position that these statutes apply to eBay any time it fails to prevent an illegal sale, the Government's claims fail for another, independent reason.  This suit is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), which shields online businesses from liability for content posted by third parties on their sites.

eBay takes an active role in preventing and reporting unlawful transactions conducted on its platform.  In order to provide a safe environment for its users, eBay clearly communicates its policies to sellers; employs multiple automated and manual tools to block, identify, and remove listings that violate those policies; dedicates significant resources to preventing circumvention; and proactively cooperates with law-enforcement agencies around the world.  eBay does this for

nearly two billion live listings at any given time.  Regrettably, however, some bad actors still manage to evade detection.  Those unlawful actions of others are not grounds for a federal case against eBay.

## BACKGROUND

### A.    Factual Background

eBay Inc. operates an online marketplace that provides a virtual venue for commerce, where sellers post listings describing the items they want to sell, buyers view them, and interested buyers and sellers can agree to transact.  Compl. ¶¶ 86-89.  To use the marketplace, potential buyers and sellers must agree to eBay's User Agreement.  *Id*. ¶¶ 90-91; *see* Ex. 1 to Nelles Decl. (User Agreement) § 1.[1]  That Agreement expressly states that eBay does not sell the products listed on the platform, and that eBay is not entering into any sale agreement with any user in any transaction.  *See* User Agreement §§ 1, 2 ("eBay is not a party to contracts for sale between third-party sellers and buyers."); § 7 ("We do not transfer legal ownership of items from the seller to [the buyer.]").  eBay is instead a forum for transactions between third-party sellers and buyers.

Since eBay was launched nearly thirty years ago, it has grown into one of the world's largest online marketplaces.  "Over one million individuals and businesses list products on eBay's website," Compl. ¶ 6, resulting in over a billion live listings at any one time.  According to the Complaint, those posts attract over 100 million potential buyers.  *Id.*  eBay has developed several tools to help buyers identify the products they are looking for.  Algorithms on eBay's platform, including a sophisticated "search algorithm" called "Best Match," help organize relevant listings,

---

[1]    The Court can consider the User Agreement because it is "incorporated by reference" in the complaint or because it is "integral to the complaint."  *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see, e.g.*, *Underwood* v. *Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 237 (S.D.N.Y. 2023).  The Complaint repeatedly cites the User Agreement and "relies heavily upon its terms and effect."  *DiFolco*, 622 F.3d at 111; *see* Compl. ¶¶ 90-91, 93, 103, 131.

display suggested search terms, and show related and sponsored products. *Id.* ¶¶ 134-140. eBay provides sellers information about how these algorithms work. *Id.* ¶¶ 97-98.

eBay also helps sellers with marketing their products. For instance, eBay offers tools to help make listings "more professional, detailed, and attractive," such as suggesting standardized descriptions for certain products eBay's algorithms recognize. Compl. ¶¶ 96-98. eBay's User Agreement clarifies that "[a]ny guidance eBay provides . . . such as pricing, shipping, listing, and sourcing is solely informational and [sellers] may decide to follow it or not." User Agreement § 2. eBay's algorithms also generate automated marketing emails to potential buyers, Compl. ¶¶ 142-143, providing a service to sellers who do not have access to buyers' email addresses.

Once a seller and buyer agree to a transaction, eBay provides a means to process payment, calculates sales tax, and sends order and shipping updates. Compl. ¶¶ 87, 108-110. eBay also offers sellers discounted postage rates it has negotiated with shippers. *Id.* ¶ 114. To capture some of the value it creates, eBay retains a small percentage of the sales price as a fee. *Id.* ¶¶ 87, 109.

To protect the platform's integrity and promote buyer and seller confidence, eBay's User Agreement and policies impose conditions on the use of its marketplace. Compl. ¶¶ 91, 121. eBay reserves the right to block, modify, hide, or remove any third-party listing; restrict or suspend a seller; and impose fees in the event that a listing violates eBay's policies. *Id.* ¶¶ 93, 102-103, 127; User Agreement § 6. To ensure the safety of buyers and sellers, eBay prohibits its users from meeting on eBay and then negotiating off-site. Compl. ¶¶ 130-131. eBay attempts to resolve disputes between buyers and sellers. *Id.* ¶ 111; User Agreement §§ 2, 11. And it offers buyers a Money Back Guarantee, which applies if the seller "fails to deliver the product." Compl. ¶ 112.

eBay also requires users to comply with all applicable laws. User Agreement § 3. Specifically, its policies "prohibit . . . the sale of products on its site that are unlawful." Compl.

¶ 122.  Recognizing that some sellers may disregard these clear directives, eBay actively screens for listings in which users offer to sell products that violate eBay's policies.  It employs an automated tool—the Listing Violation Identification System (LVIS)—to flag such posts.  *Id.* ¶ 123.  eBay also manually sweeps for goods "that get past its LVIS." *Id.* ¶ 124.  And its Customer Fraud and Risk Team can suspend sellers who "evade or try to evade the LVIS and manual sweeps."  *Id.* ¶ 126.  "Notwithstanding these efforts," bad actors sometimes list "unlawful products" that make it through.  *Id.* ¶ 125.

### B.     Procedural Background

In September 2023, the United States filed this action against eBay on behalf of EPA.  The Complaint alleges that since 2016 third parties were sometimes able to sell, or offer to sell, certain unlawful products on eBay.  Compl. ¶¶ 1-2.  The Complaint alleges four counts.  First, that eBay "sold, offered for sale, and/or caused the sale or offer for sale" of devices that interfere with emissions-control technology in automobiles, in violation of the CAA.  *Id.* ¶¶ 246-253.  Second, that eBay is a "retailer" that "distributed in commerce" products containing methylene chloride for paint or coating removal in violation of TSCA and the Methylene Chloride Rule.  *Id.* ¶¶ 254-259.  Third, that eBay "distributed or sold" certain pesticides in violation of FIFRA.  *Id.* ¶¶ 260-266.  Fourth, that for some of those sales, eBay violated a FIFRA Stop Sale, Use, or Removal Order that EPA issued in June 2020 and amended in June 2021.  *Id.* ¶¶ 217, 267-273.  The Complaint seeks civil penalties under the CAA, an injunction prohibiting eBay from violating all three statutes, and an order requiring eBay to "take other appropriate actions to remedy, mitigate, and offset the harm caused" by its alleged violations.  *Id.* at 55-56 (prayer for relief).

### ARGUMENT

The Government's claims under the CAA, FIFRA, and TSCA all fail as a matter of law for the same simple reason: eBay cannot sell or offer to sell goods that it does not own, possess, or

have the right to offer or sell.  Each of those statutes imposes liability on those who *sell*, either using that word or one of its synonyms.  To sell an item means to transfer its title or possession.  Consistent with that plain meaning, courts have consistently rejected the theory that third-party marketplaces like eBay "sell" goods.  Indeed, no court to consider the question in any context has ever concluded that eBay can be held liable as a seller.  In the limited instances where online marketplaces have been deemed liable under ordinary "seller" laws, they actually took and then transferred possession of the goods sold.  In any event, the Government's case is also independently foreclosed by Section 230 of the Communications Decency Act, which shields computer services like eBay from liability for unlawful content posted by their third-party users.[2]

## I.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY VIOLATED THE CLEAN AIR ACT.

Section 203(a)(3)(B) of the CAA provides that certain "acts and the causing thereof are prohibited," and one of those acts is "for any person to manufacture or sell, or offer to sell, or install" an emissions defeat device, "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3)(B).  That language requires the Government to establish, for each alleged violation, that eBay committed an unlawful act, and that it did so with the requisite scienter.  The Complaint does not adequately allege either.

### A.   The Complaint Does Not Allege An Unlawful Act.

The Government asserts that eBay committed three unlawful acts under the CAA:  that eBay (1) "sold," (2) "offered for sale," or (3) "caused the sale or offer" of defeat devices.  Compl. ¶ 246.  None of the three theories works.

---

[2]   In addition, to the extent the Complaint asserts claims based on transactions outside of the five-year statute of limitations, *see* 28 U.S.C. § 2462, those claims are time-barred.

       1.      **eBay did not "sell" defeat devices.**

Starting with the text, the word "sell" "goes undefined" in the CAA and therefore takes "its ordinary meaning." *Taniguchi* v. *Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). That ordinary meaning is clear, particularly in the legal context: selling an item means transferring title or possession of that item for a price. *Black's Law Dictionary* defines "sell" as "[t]o transfer (property) by sale," and it defines a "sale" as "[t]he transfer of property or title for a price." *Black's Law Dictionary* 1603, 1634 (11th ed. 2019). *Black's* in turn relies on the Uniform Commercial Code, which similarly states that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." UCC § 2-106(1). Those definitions are consistent with everyday usage: when someone sells a good to another person, they hand over the good in exchange for payment. The only court to interpret the word "sell" in Section 203(a)(3)(B) reached the same conclusion. *See Utah Physicians for a Healthy Env't* v. *Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1144 (D. Utah 2019) ("The CAA does not define the term sale, but according to Black's Law Dictionary, it is '[t]he transfer of property or title for a price.'"), *rev'd in part on other grounds*, 21 F.4th 1229 (10th Cir. 2021). In short, eBay must own or possess an item to "sell" it under the CAA.

Applying that ordinary meaning, the Complaint fails to allege that eBay sold any product that violates the CAA. The Complaint notably does not allege that eBay owned, held in its possession, or transferred any item covered by the CAA in exchange for a price.[3] Nor could it, as eBay's User Agreement expressly provides that eBay "do[es] not transfer legal ownership of items." User Agreement § 7. Instead, eBay's online marketplace serves as a platform on which third parties—the actual sellers—can agree to transfer their items to buyers in exchange for a price.

---

[3]    The Complaint makes the general allegation that eBay, in connection with its Global Shipping Program, receives products at facilities in Kentucky and the United Kingdom. Compl. ¶¶ 115-116, 119. But the Complaint does not allege that any defeat devices passed through either.

Compl. ¶¶ 86-87.  Although the Government tries to avoid calling these third parties "sellers," dubbing them instead "merchants," the Complaint cannot help but acknowledge that the "participants in [eBay's] marketplace" are "buyers and *sellers*."  *Id*. ¶ 87 (emphasis added).  It also recognizes that the third-party sellers are the entities that actually "supplied the product" to buyers.  *Id*. ¶ 109.  These concessions to reality are fatal to the Government's claim: the third-party sellers, not eBay, are the entities that "s[old]" the unlawful devices alleged in the Complaint.

In its pre-motion letter, the Government does not say what it believes "sell" means in the CAA, but it does assert that the ordinary meaning is broader than the transfer of title or possession.  ECF No. 21 at 2 (EPA Letter).  The Government offers two types of examples.  The first is a principal-agent relationship such as a securities broker or real estate agent who offers to sell a security or house that she herself does not own or possess.  *See, e.g.*, *Pinter* v. *Dahl*, 486 U.S. 622, 642-643 (1988) (securities broker); *Watts* v. *Andrews*, 649 P.2d 472, 475 (N.M. 1982) (real estate agent).  Because the principal has given its agent authority to enter into the transaction, it is natural to say that the agent "sells" or "offers to sell."  The Complaint does not allege any agency relationship between eBay and its sellers—nor could it, as eBay's users explicitly agree that no agency relationship exists.  *See* User Agreement § 19 ("No agency . . . relationship is intended or created by this User Agreement.").  Second, the Government relies on cases where a manufacturer's own sales team marketed products directly to customers.  *See Flood* v. *Just Energy Mktg. Corp.*, 904 F.3d 219 (2d Cir. 2018); *Royal Ins. Co. of Am.* v. *Bos. Beer Co.*, 2007 WL 1072166 (N.D. Ohio Apr. 5, 2007).  That is a classic case of transferring goods for a price.

Case law overwhelmingly confirms what the CAA's text makes clear:  when a marketplace like eBay does not own or possess the goods listed on its platform, it does not "sell" those goods.  In *Milo & Gabby LLC* v. *Amazon.com, Inc.*, 693 Fed. Appx. 879 (Fed. Cir. 2017), for example,

the Federal Circuit considered whether Amazon was a "seller" within the meaning of the Patent Act based on third-party sales made on its platform. Looking to dictionary definitions and the UCC, the court reasoned that "the common[] or usual meaning of the term sale" involves a contract "between two parties who agree to transfer title and possession of specific property for a price." *Id.* at 886. Because Amazon "merely provide[d] an online marketplace" and did not transfer title, the court held that "Amazon [was] not a seller." *Id*. at 890. Likewise, in *Erie Insurance Co.* v. *Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019), the Fourth Circuit held that Amazon was not a "seller" under Maryland law, which adopts the "ordinary meaning" of that term, because Amazon did not transfer title to the relevant products. And in *Amazon.com, Inc.* v. *McMillan*, 625 S.W.3d 101, 108-112 (Tex. 2021), the Texas Supreme Court explained that the "common meaning of seller" is "someone who parts with title for a price" and held that Amazon is not a seller under Texas law "when it does not hold or relinquish title to the product."

In the handful of cases the Government cites where courts have found that marketplaces could be held liable as "sellers," those marketplaces have taken and transferred possession of the relevant goods. For example, in *State Farm Fire & Casualty Company* v. *Amazon.com Services, Inc.*, 137 N.Y.S.3d 884, 889 (N.Y. Sup. Ct. 2020), the court concluded that Amazon could be held liable as a "seller" under New York products-liability law because the product at issue was sold through a service called Fulfillment by Amazon, in which Amazon takes possession of the merchant's products, stores them "physically on an Amazon shelf," and then handles the shipment itself. The court explained that, "[w]hile Amazon has disclaimed title, it certainly maintain[ed] possession of the subject product." *Id.* Likewise in *State Farm Fire & Casualty Co.* v. *Amazon.com, Inc.*, 390 F. Supp. 3d 964, 972-973 (W.D. Wis. 2019), a court found that Amazon could be held liable as a "seller" under a Wisconsin statute for a defective product that was

"store[d] . . . at Amazon fulfillment centers."  The Complaint alleges nothing of the sort for eBay, which does not take possession of any of the products at issue.[4]

Even more specifically, courts have uniformly concluded that eBay does not "sell" the goods listed on its platform because it does not own or possess them.  Indeed, *no* court has ever held that eBay is a seller.  Most importantly for this Court, the Second Circuit has already held in the context of a trademark suit brought by jeweler Tiffany & Co. that "eBay did not itself sell counterfeit Tiffany goods; only the fraudulent vendors did."  *Tiffany*, 600 F.3d at 114.  That statement was not "dicta."  EPA Letter at 2 n.1.  To the contrary, the court explained that eBay's non-seller role was important to its holdings on trademark infringement and dilution.  *See* 600 F.3d at 112, 114.  The Government also argues that the Second Circuit's conclusions were based on findings of fact about eBay's business model that are now outdated, *see* EPA Letter at 3 n.1, but that is not true either—the key fact was that "items sold on eBay are never in eBay's physical possession."  *Tiffany (NJ) Inc.* v. *eBay, Inc.*, 576 F. Supp. 2d 463, 475 (S.D.N.Y. 2008).

Courts outside this Circuit also have recognized that "[i]t is virtually common knowledge that eBay is not a seller of goods."  *Estate of Graham* v. *Sotheby's Inc.*, 178 F. Supp. 3d 974, 980-981, 998 (C.D. Cal. 2016) (granting motion to dismiss in relevant part), *rev'd in part on other grounds*, *Close* v. *Sotheby's, Inc.*, 894 F.3d 1061 (9th Cir. 2018).  In *Inman* v. *Technicolor USA, Inc.*, 2011 WL 5829024, at *6 (W.D. Pa. Nov. 18, 2011), the court held that eBay was not a "seller" under Pennsylvania law because the plaintiff did not plead "that eBay ever had physical possession

---

[4]   In its pre-motion letter, the Government cites *Loomis* v. *Amazon.com LLC*, 277 Cal. Rptr. 3d 769 (2021), which imposed strict liability as a matter of California common law on Amazon for third-party sales not fulfilled by Amazon.  *Loomis* did not purport to interpret the term "sell" or conclude that Amazon was a "seller."  Indeed, the court made clear that it would impose liability, "[w]hatever term we use to describe Amazon's role, be it 'retailer,' 'distributor,' *or merely 'facilitator.'* "  *Id.* at 783 (emphasis added) (citation omitted).  That type of policy-oriented, common-law reasoning does not bear on the interpretation of the federal statutes at issue.

of the products," or "that they were moved or stored in a facility owned by eBay." Other decisions have adopted the same reasoning. *See, e.g.*, *Stoner* v. *eBay Inc.*, 2000 WL 1705637 (Cal. Super. Ct. Nov. 1, 2000); *cf. Butler* v. *eBay Inc.*, 2006 WL 8442955 (N.D. Cal. Dec. 13, 2006).

Congress's recent legislation addressing online marketplaces follows the line drawn by courts. In the INFORM Act, enacted earlier this year, Congress required "online marketplace[s]" to collect and verify certain information from "high-volume third party seller[s]" on their platforms. 15 U.S.C. § 45f(a)(1)(A). The Act defines a "third party seller" to mean "any seller, *independent of an online marketplace*, who sells . . . a consumer product in the United States through such online marketplace's platform." *Id.* § 45f(a)(6)(A) (emphasis added). In other words, Congress has recognized that an online marketplace provides a platform for sellers but is not itself a seller. That distinction completely undermines the Government's claim.

The Government asks this Court to be the first to hold that eBay "sell[s]" products that it neither owns nor holds. The Government's theory is that eBay is a seller because of its role in various aspects of the sales transactions that occurred on its platform. For instance, the Complaint alleges that eBay connects buyers and sellers, Compl. ¶¶ 86-88; processes payments and collects a fee, *id*. ¶ 109; and provides tools that assist buyers and sellers, *id*. ¶¶ 95-100, 112, 133-140. The Complaint does not explain which of those actions, individually or in combination, crosses the line into "sell[ing]." But none of them amounts to selling as a matter of statutory text or common sense. Shipping companies connect buyers to sellers; banks and credit card companies process payments for a fee; advertising agencies and consultants help sellers reach a broader market. When private plaintiffs have argued a similar theory, courts have rejected it. *See Erie*, 925 F.3d at 142 ("Although Amazon's services were extensive in facilitating the sale, they are no more meaningful

-11-

to the analysis than are the services provided by UPS Ground.").  There is no reason for a different result simply because the Government is the plaintiff.

### 2.   eBay did not "offer to sell" defeat devices.

For much the same reasons, the Complaint does not sufficiently allege that eBay "offer[ed] to sell" defeat devices.  As with the word "sell," the CAA does not define the phrase "offer to sell." Courts therefore look to the phrase's "ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec Indus., Inc.* v. *Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000) (citing the Restatement (Second) of Contracts).   The Restatement defines an "offer" as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  Restatement (Second) of Contracts § 24 (1979); *see Offer*, *Black's Law Dictionary* 1304 (11th ed. 2019) ("The act or an instance of presenting something for acceptance; specif., a statement that one is willing to do something for another person or to give that person something.").  Combining that definition with the meaning of "sell," to "offer to sell" an item means to manifest a willingness to transfer ownership or possession in exchange for a price.  Again, the Government does not allege that eBay manifested any willingness to transfer title or possession in return for payment.

Other courts have agreed that eBay does not make offers to sell.  In *Blazer* v. *eBay, Inc.*, 2017 WL 1047572, at *2-5 (N.D. Ala. Mar. 20, 2017), for example, the court considered whether eBay made an "offer to sell" infringing items under the Patent Act.  Drawing on the meaning of that phrase in contract law, the court explained that no "offer to sell" could exist where the "purchaser could not claim that the 'seller' and he had a contract" for purchase.  *Id.* at *4.  Because "eBay's terms of service explicitly advise users that eBay is not making an offer through a listing," and because "eBay lacks title and possession of the items listed," the court concluded that "eBay's listings are not offers to sell from eBay."  *Id*.  The same reasoning applies equally here.

-12-

The Government maintains that eBay offers to sell products because it "promotes products and sales" on its platform.  Compl. ¶¶ 132-145.  Pointing buyers to third-party sellers' offers is not the same as offering to sell, because such promotions do not manifest that *eBay* is willing or even able to transfer title or possession.  To be sure, Congress could have deviated from the ordinary meaning of "offer to sell" and covered broader promotional activity.  In the federal securities laws, for example, Congress defined "offer to sell" to encompass not only "every . . . offer to dispose of . . . a security, for value," but also "every . . . solicitation of an offer to buy[] a security or interest in a security, for value."  15 U.S.C. § 77b(a)(3); *see Pinter*, 486 U.S. at 643.  But no such language appears in the CAA, nor would it even cover eBay, which (unlike a securities broker) does not itself solicit counterparties to engage in specific transactions.

### 3.   eBay did not "caus[e]" any person to sell or offer to sell defeat devices.

The Complaint also does not plausibly allege that eBay violated the CAA's prohibition on "causing . . . any person to manufacture or sell, or offer to sell, or install" an illegal defeat device.  42 U.S.C. § 7522(a)(3)(B).  The ordinary meaning of "causing" a person to do something is intentionally directing or inducing her to do it.  *See Webster's Third New International Dictionary* 356 (3d ed. 1993) ("[T]o effect by command, authority, or force <the president *caused* the ambassador to protest>."); *The New Shorter Oxford English Dictionary* 355-356 (4th ed. 1993) (causing "a person or thing *to do*" something means to "induce [or] make" her do it).  The Complaint repeatedly suggests that the CAA forbids "causing . . . the sale of" illegal defeat devices, but that is not what the statute says.  It prohibits "causing" a "person" to sell defeat devices.  42 U.S.C. § 7522(a)(3)(B).  In common parlance, that requires directing or inducing the person to engage in the specific transaction, not merely facilitating it in some way.  A gym owner

does not *cause* people to play basketball by running a league in which they can play, even if its policies make the opportunity an attractive one and even if it collects fees when people sign up.[5]

That common-sense reading is reinforced by the statutory scheme.  A defendant who intentionally uses another person to make a sale, rather than making the sale himself, is similarly culpable and should be held equally liable.  *See United States* v. *Chalaire*, 316 F. Supp. 543, 547 (E.D. La. 1970) (finding that store owner who "hired persons to sell" illegal fireworks "caused the sales" and noting that "[t]he fact that [he] did not personally do the selling is immaterial").  The CAA's "causing thereof" language plugs that hole.  By contrast, interpreting "causing thereof" to require only some role in the causal chain that ultimately led to a prohibited sale would throw the statute out of balance.  The CAA would cover many passive actors who lacked any intent to cause another person's wrongdoing and are nowhere near as culpable as actual sellers:  from Internet service providers, to banks and credit card companies, to shippers.

When Congress wants to prohibit the mere facilitation of unlawful conduct, it says so expressly.  *See, e.g.*, 49 U.S.C. § 80302(b) ("A person may not . . . transport contraband . . . [or] use an aircraft, vehicle, or vessel to facilitate [its] transportation."); 15 U.S.C. § 78u-2(f)(1) (making it illegal to "facilitate[] an evasion of" clearing requirements for security-based swaps).  And in several statutes, Congress has targeted *both* "facilitating" and "causing" the same acts, highlighting that the two concepts are distinct and Congress knows it.  *See* 21 U.S.C. § 843(b) (prohibiting certain means of "causing or facilitating the commission of any act or acts constituting a felony" under the Controlled Substances Act); 42 U.S.C. § 13361(d)(2) (directing the Secretary

---

[5]   The Government makes the same mistake in pointing to the Restatement.  It wrongly suggests that the CAA merely requires eBay "to be a cause of a harm," *i.e.* the "sale of illegal products."  EPA Letter at 3 n.2.  The statute does not prohibit "conduct [that] is a legal cause of" sales, Restatement (Second) of Torts § 431 (1965), but rather prohibits causing *a person* to sell.

of Energy to "facilitate the establishment of and, where practicable, cause to be established" certain financial assistance programs).

Courts to consider the term "causing" in similar statutes have rejected the Government's open-ended theory of causation. In *Chicago Lawyers' Committee for Civil Rights Under Law, Inc.* v. *Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008), the plaintiffs argued that Craigslist had "cause[d] to be made, printed, or published" discriminatory housing ads on its site in violation of the Fair Housing Act. The Seventh Circuit rejected that claim in language that fits this case like a glove. *Id.* The court recognized that "[C]raigslist plays a causal role in the sense that no one could post a discriminatory ad if [C]raigslist did not offer a forum." *Id.* The court explained that was not "a useful definition of cause." *Id.* The court focused instead on whether anything "in the service [C]raigslist offers *induces* anyone to post any particular listing or express a preference for discrimination." *Id*. (emphasis added). The answer was no. *Id*. at 671-672. Other courts have adopted the same approach to causation. *See Dart* v. *Craigslist, Inc.*, 665 F. Supp. 2d 961, 968-69 (N.D. Ill. 2009) ("[Craigslist] does not cause or induce anyone to create . . . illegal content."); *Payton* v. *Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1058 (N.D. Ill. 2016) (offering a messaging network that "makes it possible for people to communicate with one another . . . does not mean [the defendant] *caused* [the illegal] message to be initiated over its network").

When courts have found that an entity "caus[ed]" a prohibited act under the CAA or other statutes that use similar language, it was clear that the entity had either directed or induced that act with the specific intent to make it happen. In *United States* v. *NGL Crude Logistics, LLC*, 2017 WL 2268324, at *4 (N.D. Iowa May 24, 2017), for instance, NGL had "actively recruited Western Dubuque"—the party that violated the relevant EPA regulation—"to take the actions that it did and affirmatively guided [it] through such actions." Similarly, in *United States* v. *Rojas*,

-15-

2017 WL 2573073, at *2 (M.D. Pa. June 14, 2017), the court found that the defendant had "caus[ed]" drugs to become misbranded under the Food, Drug, and Cosmetic Act because he "ordered various veterinarians" to illegally administer them.  And in *Chalaire*, the defendant had "purchased the inventory of [illegal fireworks], advertised them, hired persons to sell them and collected the profits," thereby "causing" the sale of a hazardous substance under the Federal Hazardous Substances Act.  316 F. Supp. at 547.

The Government's allegations do not establish that eBay intentionally induced or directed any third party to sell or offer to sell any unlawful item.  "eBay does not direct users what to list . . . and beyond the basic content requirements . . . has no control over what its users list." *Rosen* v. *eBay, Inc.*, 2015 WL 1600081, at *13 (C.D. Cal. Jan. 16, 2015).  The decision to list a product and complete a sale is always up to the seller.  The Government claims that eBay "promoted, encouraged, and induced the sale of" defeat devices by using its "sales algorithms" to show listings of prohibited products in search results and send marketing emails about such listings to "potential purchasers."  Compl. ¶¶ 235-244; *see* EPA Letter at 3.  But that alleged "inducement" amounts to nothing more than online marketing, and in any event it was aimed at potential *buyers*, not *sellers*. Once a person has listed an item, showing that listing to a potential buyer does not "caus[e the] person . . . [to] sell, or offer to sell" the item in the first place.  42 U.S.C. § 7522(a)(3)(B).  *See Chicago Lawyers Comm.*, 519 F.3d at 671-672 (holding that Craigslist did not "induce[] anyone to post" a discriminatory listing because it did not, "for example. . . offer a lower price to people who include [such] statements in their postings").

Moreover, the Complaint does not allege that eBay intended that anyone sell a prohibited product.  On the occasions that its algorithms resulted in the display of a prohibited item to a user, that happened *despite* eBay's prevention efforts.  eBay policies specifically prohibit the sale of

-16-

defeat devices.  Compl. ¶ 172.  Recognizing that some persons will "try to evade" its detection, *id.* ¶ 126, eBay expends significant resources to try to stop users from listing and selling such items, denying itself fees in the process.  Those efforts are flatly inconsistent with the notion that eBay "caus[ed]" anyone to sell defeat devices.  One does not cause another person to take a certain action if she tries to stop him, even if those efforts fail.  Courts have recognized this common-sense point.  *See Dart*, 665 F. Supp. 2d at 969 ("Plaintiff's argument that Craigslist causes or induces illegal content is further undercut by the fact that Craigslist repeatedly warns users not to post such content.").  So has the EPA *in the context of this very statute*, explaining in a regulation that for "the 'causation' aspect of section 203" of the CAA, "a person's efforts to prevent [a prohibited act] [are] evidence that they did not cause the violation."  *Control of Emissions from Nonroad Spark-Ignition Engines and Equipment*, 73 Fed. Reg. 59034, 59135 (Oct. 8, 2008).

## B.   The Complaint Does Not Allege Scienter.

The Government's CAA claim fails for an independent reason:  the Complaint does not plausibly allege that eBay acted with the requisite scienter.  For each asserted violation of the CAA, the Government must establish that eBay "kn[ew] or should [have] know[n] that [the defeat device at issue] [was] being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3)(B).  Here, the Complaint does not allege that for *any*—let alone *all*—of the thousands of asserted violations, eBay actually knew or had reason to know that the product was being offered or would be used as a defeat device.  Instead, the Government merely claims that some unspecified number of listings "included language clearly identifying the deleterious effect of the product on emissions-related elements of design."  Compl. ¶¶ 170-171 (listings had references such as "Downpipe back exhaust" and "DPF Race Exhaust").  The implication is that eBay was required to monitor the content of each and every listing on its platform, and should have somehow recognized or decoded every moniker for defeat devices that malicious sellers might use.

Courts have repeatedly rejected the theory that an online platform may be charged with knowledge of the details of every listing on the site.  The volume of listings on eBay requires the company to rely heavily on automated filtering systems to try to catch prohibited listings.  Compl. ¶¶ 6, 123-124.  In *Tiffany*, which involved the sale of counterfeit jewelry on eBay, the plaintiff had to establish that eBay "kn[ew] or ha[d] reason to know" that products listed on eBay infringed Tiffany's trademark.  600 F.3d at 107.  The Second Circuit acknowledged that eBay was generally aware that bad actors sold counterfeit products on its platform, and indeed had spent millions of dollars to remove such products.  *Id*. at 109.  But the court concluded that eBay did not "kn[o]w or ha[ve] reason to know" that the particular products at issue were infringing.  *Id*.  Instead, eBay's "bona fide efforts to root out infringement . . . support[ed] a verdict finding no liability," even if eBay "was not fully successful in stopping infringement."  *Omega SA* v. *375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021) (discussing *Tiffany*); *see Hartmann* v. *Amazon.com, Inc.*, 2021 WL 3683510, at *7 (S.D.N.Y. Aug. 19, 2021) (concluding that plaintiff did not plead that Amazon "knew" or "should have known" that videos on its platform infringed on copyright, even though it "possessed tools that in theory could have been deployed to uncover the fact of the infringement").

## II.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY VIOLATED THE FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT.

The Government's FIFRA claim is just as inconsistent with statutory text and precedent. It asserts that eBay "distributed or sold" certain pesticides, in violation of both FIFRA itself and "Stop Sale, Use, or Removal" orders that EPA issued to eBay.  Compl. ¶¶ 261, 269; *see* 7 U.S.C. §§ 136a(a), 136j(a), 136k.  Under FIFRA, the phrase "distribute or sell" means "to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver."  7 U.S.C.

§ 136(gg).  The Government does not specify which of those verbs it thinks apply here, but just as with the CAA, all of them require holding title to, possessing, or controlling prohibited pesticides.

Like the CAA, FIFRA does not define "sell" and "offer for sale."  They should therefore be given their ordinary meaning, which, as explained above, requires the Government to allege that eBay had title or possession.  *See supra* pp. 7-13.  As for the statute's other verbs, because eBay never has custody of the items sold on its site, it cannot "hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment, or receive," on any ordinary understanding of those terms.  That leaves "distribute" and "deliver," which amount to the same thing here.  The only meaning of "distribute" that makes sense in this context is "[t]o deliver." *Black's Law Dictionary* (11th ed. 2019).  And to "deliver" means "to give, transfer," or "yield possession or control of."  *Webster's Third New International Dictionary* 597 (3d ed. 1993).  In other words, both distribution and delivery mean the transfer of an unlawful pesticide—and the Complaint does not allege that eBay can effect that transfer.

The statutory context supports that reading.  Section 136k of FIFRA provides that if EPA believes a pesticide "has been or is intended to be distributed or sold in violation of any" of FIFRA's prohibitions, it may issue a stop-sale order "to any person who *owns, controls, or has custody* of such pesticide."  7 U.S.C. § 136k (emphasis added).  The statute thus indicates that any person in a position to "distribute[] or s[ell]" a pesticide will be a "person who owns, controls, or has custody of such pesticide."  *Id.*  eBay does not own or have custody of the items sold on its site.  Nor does eBay control those items; again, only the actual sellers do.  eBay controls its platform, of course, and can remove sellers' listings.  But controlling sellers' ability to list their wares is *not* the same as controlling the wares themselves—which is what FIFRA requires.  To be sure, eBay has voluntarily complied with EPA's Stop Sale Order because it shares the

Government's desire to prevent sellers from listing unlawful pesticides, but the text of Section 136k, like the text of Section 136(gg), is not written to apply to third-party online marketplaces.

The Government concedes that sellers ship their goods via other third parties like UPS, FedEx, and the Government's own U.S. Postal Service, Compl. ¶¶ 114, 214, but it points to a single transaction in which eBay supposedly possessed or controlled a relevant pesticide at a U.K. facility in connection with eBay's Global Shipping Program.  That allegation similarly fails to state a FIFRA claim.  According to the Complaint, "eBay shipped" a prohibited pesticide from the U.K. facility to a buyer in Virginia.  *Id.* ¶ 208.  The Complaint says nothing about eBay's role in moving the goods, and in fact all but concedes that the actual shipping was carried out by third party Pitney Bowes.  *See id.* ¶ 117.[6]  Moreover, even if eBay at some point received, possessed, or moved the pesticide, that would have occurred exclusively in the U.K., putting it beyond FIFRA's reach.  *See Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

## III.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT EBAY VIOLATED THE TOXIC SUBSTANCES CONTROL ACT OR THE METHYLENE CHLORIDE RULE.

The Government also asks the Court to disregard the clear meaning of TSCA and the Methylene Chloride Rule.  TSCA empowers EPA to make rules prohibiting or restricting the "distribution in commerce" of certain chemical substances.  15 U.S.C. § 2605(a).  Exercising that authority, EPA has promulgated the Methylene Chloride Rule, which provides that "all *retailers* are prohibited from distributing in commerce methylene chloride" or products that contain methylene chloride for paint and coating removal.  40 C.F.R. § 751.105(c) (emphasis added).  The

---

[6]   As the terms and conditions for the U.K. "Global Shipping Programme" that were in effect at the time explain, the U.K. facility "is managed by Pitney Bowes and operated by a third party logistics provider"; Pitney Bowes provides all the relevant shipping and customs-related services; and "eBay is not providing or responsible for any of th[ose] [s]ervices."  eBay, *Global Shipping Programme: Seller Terms & Conditions (Version June 2021)*, https://pages.ebay.co.uk/ shipping/globalshipping/seller-tnc.html (last accessed on December 26, 2023).

Government asserts that eBay violated that prohibition by "distributing in commerce" certain methylene chloride products as a "retailer."  Compl. ¶¶ 255-256; *see* 15 U.S.C. § 2614(1); 40 C.F.R. § 751.105(c).  That is doubly wrong: the Complaint does not plausibly allege that eBay distributes methylene chloride in commerce, or that eBay is a retailer.

First, the Complaint does not plausibly allege that eBay "distribute[s]" any methylene-chloride products "in commerce."  Both TSCA and the Methylene Chloride Rule adopt the same definition of the phrase "distribute in commerce":  "to sell . . . in commerce; to introduce or deliver for introduction into commerce . . . ; or to hold [an item] . . . after its introduction into commerce."  15 U.S.C. § 2602(5); 40 C.F.R. § 751.103.  TSCA does not further define these terms, and their ordinary meaning in TSCA is the same as in the CAA and FIFRA.  eBay does not "sell" methylene-chloride products because it does not transfer title to them for a price; it does not "deliver" them because it does not transfer the products to the buyers; and it does not "hold" them because it does not have custody of the products at any point.  As with the CAA and FIFRA, Congress drafted TSCA to deal with sellers and distributors—not third-party online marketplaces.

For similar reasons, the Complaint does not adequately allege that eBay "introduce[d]" any methylene-chloride products "into commerce."  To "introduce" means "to lead or bring in esp. for the first time."  *Merriam-Webster's Collegiate Dictionary* 657 (11th ed. 2003).  Accordingly, to "introduce" an item "into commerce" means to carry out the first transaction that places it into the stream of commerce—for example, the initial sale from manufacturer to wholesaler, or acceptance at a port of entry.  *See, e.g.*, *United States* v. *Twenty-Five Packages of Pan. Hats*, 231 U.S. 358, 362 (1913) ("[W]hen the goods . . . arrived at the port of entry, there was an attempt to introduce them into the commerce of the United States.  When they were unloaded and placed in [a customs warehouse], they were actually introduced into that commerce.").  Any methylene-chloride

products listed on eBay were introduced into commerce long before the transactions at issue; that is how they ended up in the hands of would-be sellers. But in any event, it was those third-party sellers who were attempting to re-introduce the products into the stream of commerce.

Second and relatedly, eBay is not a "retailer" under the Methylene Chloride Rule. The Rule defines a "retailer" as one "who distributes in commerce or makes available a chemical substance or mixture to consumer end users, including e-commerce internet sales or distribution." 40 C.F.R. § 751.103. Because eBay does not "distribute in commerce" methylene chloride, it is not a "retailer" under the Rule. The Rule includes "sales or distribution" by "e-commerce," but again eBay is neither a seller nor a distributor. If there were any doubt, the ordinary meaning of "retailer" dispels it. *See Bond* v. *United States*, 572 U.S. 844, 861 (2014) ("[I]t is not unusual to consider the ordinary meaning of a defined term."). A "retailer" is "engaged in the business of selling personal property to the public or to consumers." *Black's Law Dictionary* 1573 (11th ed. 2019). eBay does not sell or own these items. As a court in this Circuit put it, "eBay is an electronic marketplace, *not a retailer.*" *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 476 (emphasis added).

## IV.   SECTION 230 OF THE COMMUNICATIONS DECENCY ACT INDEPENDENTLY BARS THE GOVERNMENT'S CLAIMS.

The Government's claims fail for an independent reason: they are all barred by Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230(c)(1). The CDA was enacted to protect website operators from having "to screen each of their millions of postings for possible problems." *Force* v. *Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019) (citation omitted). Seeking to "promote the continued development of the Internet" and "preserve the vibrant and competitive free market," Congress directed that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(b)(1), (b)(2), (c)(1). Construing that language, the Second Circuit has

explained that Section 230 "shields a defendant from civil liability when:  (1) it is a 'provider . . . of an interactive computer service' . . . ; (2) the plaintiff's claims 'treat[]' the defendant as the 'publisher or speaker' of information; and (3) that information is 'provided by' an 'information content provider,' other than the defendant interactive computer service." *Force*, 934 F.3d at 64.

Each prong is satisfied here.  First, eBay's online marketplace is an "internet computer service," as it "provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *see Mazur* v. *eBay Inc.*, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) ("eBay qualifies as the provider of an interactive computer service.").

Second and critically, the Government seeks to hold eBay liable as a publisher.  The Second Circuit applies "a capacious conception of what it means to treat a website operator as the publisher" of information.  *Force*, 934 F.3d at 65 (citation omitted).  The key question is whether the plaintiff seeks to hold the provider "liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *FTC* v. *LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016).  Here, the core of the Complaint is that eBay should have removed sellers' listings for unlawful products, instead of allowing those listings to turn into sales.  As numerous courts have recognized, that theory treats eBay as a publisher. *See, e.g.*, *Mazur*, 2008 WL 618988, at *9 ("[P]laintiff's assertion that eBay knew of the seller's illegal conduct and failed to prevent it is . . . under the ambit of section 230."); *Stoner*, 2000 WL 1705637, at *3 ("At bottom, plaintiff's contention is that eBay should be held responsible for failing to monitor the products auctioned over its service.").

The Government asserts that it is "not seeking to hold eBay liable for publishing content" but rather for its "own conduct in selling illegal products."  EPA Letter at 3.  Although the Complaint alleges that eBay provides additional services to buyers and sellers, none of those

allegations takes eBay's alleged conduct out of the ambit of core publisher activity.  For example, the Government alleges that eBay's "sales algorithms" help match buyers and sellers, suggest related products, and generate targeted emails to potential buyers.  Compl. ¶¶ 132-143, 235.  The Second Circuit, however, has held that "algorithms that are designed to match that information with a consumer's interests" do not take a provider outside the realm of publishing.  *Force*, 934 F.3d at 66; *cf. Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 499 (2023) (offering content-agnostic "recommendation algorithms" does not "convert . . . passive assistance into active abetting").  The Complaint also alleges that eBay facilitates sales in other ways, like providing marketing guidance to third-party sellers, and processing some payments.  Compl. ¶¶ 90-103; *see* EPA Letter at 3.  But only because eBay failed to take down certain listings is the Government concerned with its other services.  As the Supreme Court explained in *Twitter*, a claim against an internet platform that "at most allegedly stood back and watched" once it was "up and running" "rests less on affirmative misconduct and more on an alleged failure to stop [bad actors] from using the[] platform[]." 598 U.S. at 499-500.  That alleged editorial failure is textbook protected publishing activity.

Finally, eBay is not the provider of the information that it publishes.  To satisfy this third prong, the published information must be developed by an "information content provider" "*other than the defendant*."  *Force*, 934 F.3d at 64 (emphasis added).  Here, it is the third-party sellers who are "information content providers" because they alone are "responsible, in whole or in part, for the creation or development of information provided."  47 U.S.C. § 230(f)(3).  A platform like eBay does not itself develop third-party content under Section 230 "unless [it] directly and materially contributed to what made the content itself unlawful."  *Force*, 934 F.3d at 68 (citation omitted).  Here, "what made the content itself unlawful" was that the third-party listings were for

products that are prohibited by law.  The Complaint does not allege that eBay directly or materially

contributed to that aspect of any listing.  Section 230 thus squarely applies.

## CONCLUSION

eBay does not "sell" or "distribute" items listed on its platform because eBay does not hold

or transfer title or possession of those items.  eBay also never causes anyone to sell or offer to sell

unlawful items, and indeed takes significant steps to prevent such sales.  In any event, Section 230

bars the Government's claims, which effectively seek to hold eBay liable for listings posted by

third parties.  The Complaint therefore should be dismissed with prejudice.[7]

---

[7]     At a minimum, the Court should hold that it lacks statutory authority to order the mitigation relief the Government requests.  The Government seeks an order directing eBay "to take other appropriate actions to remedy, mitigate, and offset the harm caused by its . . . violations."  Compl. at 56 (prayer for relief).  The statutes at issue do not permit that relief.  The "CAA claims in this action arise under Title II," *Id*. ¶ 8, which grants district courts only "jurisdiction to restrain violations."  42 U.S.C. § 7523(a).  The relevant sections of FIFRA and TSCA are similarly limited. *See* 7 U.S.C. § 136n(c) (granting "jurisdiction specifically to enforce, and to prevent and restrain violations" of FIFRA); 15 U.S.C. § 2616(a)(1)(A) (granting "jurisdiction over civil actions to . . . restrain any violation of section 2614" of TSCA).  As courts have held, the authority to restrain violations by imposing an injunction does not extend to ordering affirmative mitigation measures. *See Liebhart* v. *SPX Corp.*, 2020 WL 6999229, at *11 (W.D. Wis. Feb. 7, 2020).

Respectfully submitted,

/s/ Sharon L. Nelles

Stacie Fletcher (admitted *pro hac vice*)
Rachel Levick (admitted *pro hac vice*)
Mia Donnelly (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER
1050 Connecticut Avenue NW
Washington, DC 20036

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Jeffrey B. Wall (admitted *pro hac vice*)
Zoe A. Jacoby (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006

Laura Kabler Oswell (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, CA 94301