# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br>        *Plaintiff,* ) <br> ) <br>   v. ) <br> ) <br> EBAY INC. ) <br> ) <br>        *Defendant.* ) <br> ) | Case No. 1:23-cv-07173-OEM-LB <br><br> ORAL ARGUMENT REQUESTED |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Stacie Fletcher (admitted *pro hac vice*)
Rachel Levick (admitted *pro hac vice*)
Mia Donnelly (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER
1050 Connecticut Avenue NW
Washington, DC 20036

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

Jeffrey B. Wall (admitted *pro hac vice*)
Zoe A. Jacoby (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006

Laura Kabler Oswell (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, CA 94301

*Counsel for Defendant eBay Inc.*

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I.     THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE THE CAA ...........1

        A.     The Government fails to establish that eBay "sells" defeat devices ........................1

        B.     The Government fails to establish that eBay "offer[s] to sell" defeat devices ..................................................................................................................6

        C.     The Government fails to establish that eBay "caus[es]" anyone to sell defeat devices .........................................................................................................6

II.    THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE FIFRA ................9

III.   THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE TSCA ..................9

IV.   THE OPPOSITION CONFIRMS THAT SECTION 230 BARS THE GOVERNMENT'S CLAIMS ...............................................................................................10

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc.* v. *Pepper*,
  139 S. Ct. 1514 (2019) ................................................................................................................2

*Barnes* v. *United States*,
  142 F.2d 648 (9th Cir. 1944) ....................................................................................................10

*Blazer* v. *eBay, Inc.*,
  2017 WL 1047572 (N.D. Ala. Mar. 20, 2017) ...........................................................................6

*Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ...................................................................................................................7

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc.* v. *Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) .....................................................................................................8

*Corker* v. *Costco Wholesale Corp.*,
  2019 WL 5895430 (W.D. Wash. Nov. 12, 2019) ....................................................................10

*Erie Ins. Co.* v. *Amazon.com, Inc.*,
  925 F.3d 135 (4th Cir. 2019) .....................................................................................................4

*Loomis* v. *Amazon.com LLC*,
  277 Cal. Rptr. 3d 769 (Ct. App. 2021) ..................................................................................4, 5

*Pinter* v. *Dahl*,
  486 U.S. 622 (1988) ................................................................................................................3, 6

*Scott* v. *JPMorgan Chase & Co.*,
  2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) ..............................................................................9

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
  2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ........................................................................10

*State Farm Fire & Cas. Co.* v. *Amazon.com Servs., Inc.*,
  137 N.Y.S.3d 884 (Sup. Ct. 2020) .............................................................................................5

*Taniguchi* v. *Kan Pac. Saipan, Ltd.*,
  566 U.S. 560 (2012) ...................................................................................................................2

*Tiffany (NJ) Inc.* v. *eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) .........................................................................................................4

*United States* v. *NGL Crude Logistics, LLC*,
   2017 WL 2268324 (N.D. Iowa May 24, 2017)......................................................7, 8

*Utah Physicians for a Healthy Env't* v. *Diesel Power Gear LLC*,
   374 F. Supp. 3d 1124 (D. Utah 2019)..........................................................................4

**Statutes and Regulations**

7 U.S.C. § 136(gg) .............................................................................................................9

15 U.S.C. §45f(f)(6)(B) .....................................................................................................5

15 U.S.C. § 2602(5) ...........................................................................................................9

29 U.S.C. § 1149................................................................................................................2

42 U.S.C. § 7522(a)(3)(B) ..............................................................................................5, 7

47 U.S.C. § 1432(a) ...........................................................................................................2

40 C.F.R. § 751.105(c).......................................................................................................9

**Other Authorities**

Brief of Petitioner, *Apple Inc.* v. *Pepper*,
   139 S. Ct. 1514 (2019) (No. 17-204), 2018 WL 3870180.......................................3

Cause, *Merriam-Webster Dictionary*,
   http://tinyurl.com/mp252zv4 ....................................................................................7

Complaint and Affidavit, *United States* v. *Sizemore*,
   No. 1:17-cr-87 (E.D.N.Y. Nov. 21, 2016), ECF No. 1 .............................................5

*Control of Emissions from Nonroad Spark-Ignition Engines and Equipment*,
   73 Fed. Reg. 59034, 59135 (Oct. 8, 2008)................................................................8

Deliver, *Webster's Third New International Dictionary* (3d ed. 1993).........................9

Information, *United States* v. *Ruff*,
   No. 2:06-cr-132 (E.D. Wash. Dec. 8, 2006), ECF No. 1 .........................................5

Magistrate Complaint, *United States* v. *Sun*,
   No. 3:20-cr-5 (N.D. Ga. Apr. 8, 2020), ECF No. 1 ..................................................5

Sell, *Webster's Third New International Dictionary* (3d ed. 1993) ...............................2

## PRELIMINARY STATEMENT

The Government's opposition is striking. The Government does not meaningfully dispute that the ordinary meaning of the statutory language at issue here does not cover eBay's alleged conduct. Nor does the Government dispute that it is asking the Court to do something unprecedented: to hold a pure third-party marketplace like eBay liable as a seller under the CAA, FIFRA, or TSCA. Perhaps even more surprisingly, the Government makes no secret why it is brushing aside ordinary meaning and precedent. It believes, as a matter of policy, that eBay "should be held accountable" for unlawful sales that third-party sellers make on its platform. Opp. 2. The Government attempts to support that outcome by cherry-picking uncommon or colloquial meanings of terms like "sell" or "cause" that have no application here. That approach leaves the Government with no articulable test for when someone other than an actual seller can be held liable under these or similar seller statutes. The Court should dismiss the Complaint.

## ARGUMENT

**I. THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE THE CAA.**

**A. The Government fails to establish that eBay "sells" defeat devices.**

As eBay has explained, eBay did not "sell" defeat devices in violation of the CAA for a simple reason: to "sell" means to transfer possession or title in exchange for a price, and the Complaint does not allege that eBay owned or possessed defeat devices. Mot. 7-12. The Government does not dispute that ordinary meaning; indeed, it agrees that *Black's Law Dictionary* and the UCC define "sale" as "[t]he transfer of property or title for a price." Opp. 9, 10 (citation omitted). The Government briefly argues (at 9) that this "is what eBay does—it takes a consumer's money and, in return, the consumer gets a product." But that sleight of hand hides the critical point: the third-party seller, not eBay, is the one who "transfer[s]" the product in exchange for a price. *See* Compl. ¶ 109. A marketplace for third-party sellers is not a retailer. eBay "takes [a]

consumer's money" in only two senses: (i) it charges a fee to sellers and (ii) it processes the buyer's payment to the seller. Neither is "selling." Banks and credit-card companies do not "sell" goods when they facilitate transactions in the same way.

The Government thus quickly pivots and argues that eBay "sell[s]" defeat devices because it "markets" or "promotes" them. Opp. 9-12. Citing the *seventh* entry in *Webster's Third New International Dictionary*, the Government asserts (at 10) that "sell" means "to cause or promote the sale of" or "to influence or induce to make a purchase." But the fact that a "definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi* v. *Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 568-569 (2012). The word "sell" is used to mean "promote" only in the specific context of marketing, as *Webster's* examples demonstrate: "comics [sell] newspapers"; "your product, effectively displayed, will [sell] the shopper." *Webster's Third New Unabridged Dictionary* 2062 (3d ed. 1993). That informal, ad-speak meaning does not fit these statutes, which regulate commercial transactions. Congress knows the difference between selling and marketing. *See, e.g.*, 29 U.S.C. § 1149 (prohibiting false statements "in connection with the marketing or sale of" benefit plans). If Congress had wanted to prohibit marketing here, it would have said so. *See, e.g.*, 47 U.S.C. § 1432(a) (network "shall not offer, provide, *or market*" certain "services directly to consumers.") (emphasis added).

The Government also suggests that eBay is a seller because it "procures" potential purchasers or "persuades" them to make purchases. Opp. 11-12. But the Government does not offer a single example that applies to eBay's business model. The Government notes (at 11) that in an antitrust case that did not concern the meaning of the word "sell," the Supreme Court described Apple as "selling" iPhone apps it may not own on its App Store. *See Apple Inc.* v. *Pepper*, 139 S. Ct. 1514 (2019). But that is because Apple's own brief described Apple as

"sell[ing] . . . apps to consumers." 2018 WL 3870180, at *18. And eBay has already distinguished the Government's other cases: some involve principal-agent relationships; others involve a manufacturer's own sales team marketing products. *See* Mot. 8. The Government's only response is that many of those cases did not *expressly* rely on agency law. Opp. 11 n.3; *but see Pinter* v. *Dahl*, 486 U.S. 622, 643-646 (1988). That misses the point. Mentioned or not, the agency relationship alters the dynamic between transacting parties. Here, the Government does not allege that eBay is an agent for sellers.

In short, the Government provides no clear, workable theory of what "sell" means. It jumps between secondary uses of the term, all of which apply to contexts that have nothing to do with eBay's marketplace. Even under these strained definitions, the Government does not articulate precisely when a third party—whether a marketplace, a bank, or a logistics provider—plays a sufficient role in facilitating a sale to transform into a seller. The unworkability of that approach is obvious. Whatever the supposed key to selling—whether failing to remove listings, accepting payments, promoting third-party listings, influencing consumer decisions, or some combination of those—the Government would have to prove that eBay satisfied that test for each of the many thousands of alleged transactions at issue, meaning that eBay could drift in and out of "seller status" depending on its role in any particular transaction. Opp. 9. The statute's ordinary meaning contemplates a far simpler inquiry: whether eBay transferred possession or title for a price.

Turning from text to precedent, the Government fails to distinguish the many cases holding that an online marketplace like eBay does not "sell" an item unless it transfers ownership or possession.[1] It tries to dismiss *Erie Ins. Co.* v. *Amazon.com, Inc.*, 925 F.3d 135 (4th Cir. 2019),

---

[1] The Government accuses eBay (at 13) of "mis-stat[ing]" the holding of *Utah Physicians for a Healthy Env't* v. *Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1144 (D. Utah 2019),

because the Maryland statute in that case defined "seller" to require transfer of title. Opp. 13. In holding that Amazon was not a seller, however, the court emphasized that the statutory definition "precisely" tracks the term's "ordinary meaning." 925 F.3d at 141. The Government agrees (at 9) that the term "sell" in the CAA should be given its ordinary meaning, so *Erie* directly applies here. The Government also argues (at 10) that *Tiffany (NJ) Inc.* v. *eBay Inc.*, 600 F.3d 93 (2d Cir. 2010), relied on outdated facts. But as eBay has explained, the key reason for *Tiffany*'s conclusion that eBay "[did] not itself sell items," 600 F.3d at 97, was that those items "[were] never in eBay's physical possession." Mot. 10 (citation omitted). That has not changed.

Rather than address the rest of eBay's cases, the Government asserts that products-liability and intellectual-property cases are "distinguishable . . . on policy grounds." Opp. 13 n.6, 14 n.8. That is a convenient dodge, because it would sweep aside most of the guiding case law. It also makes no sense. The same ordinary meaning of "sell" should apply whether Congress prohibits the sale of environmentally harmful products or other injurious or infringing products. The Government does not even believe its own argument, because it too relies on products-liability cases. The Government first cites (at 12) *Loomis* v. *Amazon.com LLC*, 277 Cal. Rptr. 3d 769 (Ct. App. 2021), but *Loomis* did not conclude that Amazon was a "seller." Instead, the court deemed that question irrelevant, stating that it would impose common-law liability "whatever term we use to describe Amazon's role, be it 'retailer,' 'distributor,' *or merely 'facilitator*.'" 277 Cal. Rptr. 3d at 783 (emphasis added). Moreover, it did so because of Amazon's power to influence product safety in the distribution chain—something the Government does not allege here. *Id.* The

---

because the court later found, after trial, that one defendant sold defeat devices that it did not own or possess. 2020 WL 4282148, at *9, *17 (D. Utah Mar. 6, 2020). But that defendant did "not dispute" that it sold defeat devices. *Id.* *9 n.85. A factual finding premised on a concession does not negate the court's earlier holding that "sell" means to transfer title or possession.

Government also invokes (at 12-13 n.5) two other product-liability cases, but both involved the transfer of possession. *See* Mot. 9-10. The Government suggests that this fact was not key, but that is not true. *See State Farm Fire & Cas. Co.* v. *Amazon.com Servs., Inc.*, 137 N.Y.S.3d 884, 889 (Sup. Ct. 2020) ("While Amazon has disclaimed title, it certainly maintains possession.").

Lacking support in text and precedent, the Government seeks refuge in policy: it urges the Court to avoid "creat[ing] loopholes" that undermine the CAA's "broad purpose" of preventing defeat devices from entering the market. Opp. 10-11, 23. Even if bare reliance on policy were permissible, the plain meaning of "sell" leaves no "loopholes" at all. For every defeat device sold on eBay's platform, there is a "sell[er]" (not to mention a "manufacture[r]" and an "install[er]") who can be held responsible. *See* 42 U.S.C. § 7522(a)(3)(B). In this Complaint, the Government scrupulously avoids addressing the role of third-party sellers altogether, preferring to call them "merchants" and declining to explain how they and eBay can somehow both sell an item, when only the third party owns, holds, lists, and transfers it. But the Government is well aware of their role, as it prosecutes sellers for unlawful sales they make on eBay—*and in doing so often swears under oath that eBay is a marketplace for buyers and sellers*.[2] Congress has likewise distinguished between sellers and marketplaces in the INFORM Act. *See* Mot 11.[3] The Government may consider it good policy to also pursue eBay, but Congress has made a different choice.

---

[2] *See, e.g.*, *United States* v. *Sun*, No. 3:20-cr-5 (N.D. Ga. Apr. 8, 2020), ECF No. 1 (defendant violated FIFRA by selling unregistered pesticides on eBay, "an internet-based marketplace where individuals and companies can sell commodities"); *United States* v. *Sizemore*, No. 1:17-cr-87 (E.D.N.Y. Nov. 21, 2016), ECF No. 1 (defendant "sold" items on eBay, an "internet sales-auction website"); *United States* v. *Ruff*, No. 2:06-cr-132 (E.D. Wash. Dec. 8, 2006), ECF No. 1 (defendant "sold" goods on eBay, "an online marketplace for the sale of goods and services by registered individuals and businesses").

[3] The Government notes (at 15) that the Act contemplates that a "seller" may operate a marketplace. *See* 15 U.S.C. §45f(f)(6)(B). That provision concerns companies like Amazon and Walmart that both operate a marketplace and separately sell items the company owns and holds. It does not suggest that a pure third-party marketplace like eBay is itself a seller.

### B. The Government fails to establish that eBay "offer[s] to sell" defeat devices.

As eBay has explained, it did not "offer to sell" any defeat devices for the simple reason that eBay lacks the ability to sell them. Mot. 12. The Government counters that eBay displays third-party listings on its site and "commits to" perform several functions to facilitate transactions, like guaranteeing shipping and resolving sales disputes. Opp. 15. But that cannot make eBay a covered offeror; otherwise banks, credit-card companies, logistics providers, marketing consultants, and more also would be "offerors." The Government relies on *Pinter* (at 15-16) to argue that a person can "offer to sell" items she does not own or hold, but *Pinter* was interpreting laws that expressly define the term in a way that does not require the transfer of title. *See* 486 U.S. at 643. eBay explained this in its opening brief (at 13), and the Government does not respond.

Nor does the Government have an answer to *Blazer* v. *eBay, Inc.*, 2017 WL 1047572, at *2-5 (N.D. Ala. Mar. 20, 2017), which expressly held that eBay does not "offer to sell" items listed on its site. The Government notes (at 16 n.9) that eBay did not accept payments at that time. But that was hardly dispositive. The key facts on which *Blazer* relied—that "eBay lacks title and possession of the items," that its "terms of service" make clear "that eBay is not making an offer," and that listings "explicitly identif[y] a 'seller,'" *id.* at *4—are alleged here too.

### C. The Government fails to establish that eBay "caus[es]" anyone to sell defeat devices.

The Government claims that eBay at least "causes" sales, even if it is not a seller. That too is wrong. As eBay previously argued (at 13-17), the CAA prohibits intentionally directing or inducing another person to sell a defeat device, and eBay is not alleged to have done either. The Government admits that "causing can mean inducing or directing," but argues that it can also mean "bringing about" a sale in other ways, such as by "facilitating," "encouraging," or "promoting" that event. Opp. 16, 18. Even assuming the word "cause" can, in certain settings, be used to mean

those things, the Government has to show that facilitation is the *ordinary* meaning of "caus[e]"—*i.e.*, the meaning that both parties agree Congress intended here.

In general, causation in a regulatory statute does not mean mere facilitation. That is particularly true in the CAA, which asks whether eBay "caus[es] . . . any person to sell." 42 U.S.C. § 7522(a)(3)(B). When Congress speaks of causing another person to take an action, the ordinary meaning is intentionally directing or inducing her to do it. *See* Mot. 13. The Government tries to water the inquiry down by misquoting the statutory language. It asks whether eBay is "a 'cause' of sales." Opp. 16. But even the Government's own dictionary distinguishes between causing *a person to take an action* and being a cause *of some event*, and defines the former to require intentional direction or inducement. *See* Cause, *Merriam-Webster Dictionary*, http://tinyurl.com/mp252zv4 (defining "cause" as "1: to serve as a cause or occasion of [cause *an accident*]; 2: to compel by command, authority, or force [caused *him to resign*]") (emphases added). The Court should follow the ordinary meaning of "cause" as it is actually used in the statute.

The plain-language reading is also the only one that gives effect to Congress's choice of words. The Government admits (at 17 n.10, 18) that its approach reads "causing" to mean "facilitating," and thus essentially creates a form of aiding-and-abetting liability. But as eBay noted (at 14), Congress knows the difference between those terms. And it has "been quite explicit in imposing civil aiding and abetting liability in other instances." *Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 183 (1994). Congress did not do so here.

Confirming as much, the Government does not cite a single case involving a "causing" statute in which the defendant was held liable merely for playing some facilitating role. It claims (at 17 n.10) that *United States* v. *NGL Crude Logistics, LLC*, 2017 WL 2268324 (N.D. Iowa May 24, 2017), adopted a "similar approach" to the Restatement's "substantial factor" test. But *NGL*

-7-

did nothing of the sort. The court concluded that NGL had "caused Western Dubuque" to create improper renewable fuel credits because NGL had "developed the plan," "recruited Western Dubuque," "drafted the [relevant] agreements," provided legal advice "leading Western Dubuque to believe [the scheme] was lawful," and agreed to reimburse Western Dubuque if it failed. 2017 WL 2268324, at *4, *7. That is hardly passive facilitation.

The Government's reading also has absurd consequences. Many commercial actors—from advertisers to commercial landlords—can also be said to facilitate, promote, or "encourage[] . . . merchants and consumers to conduct their transaction[s]." Opp. 17. The Government does not dispute that its interpretation could cover all of these actors. The Seventh Circuit rejected that very approach to similar language in *Chicago Lawyers' Committee for Civil Rights Under Law, Inc.* v. *Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008). The Government tries (at 18) to distinguish *Craigslist* because eBay allegedly provides more services to users than Craigslist does, but the court's point was that if mere facilitation—in whatever form—causes sales, then "so do . . . courier services" and "software" companies, "yet no one could think" that those actors are liable. *Id.*

The Government briefly argues that eBay "induce[s] . . . merchant[s] to sell products" by offering a platform with features that are useful to sellers in general. Opp. 18 n.11. That level of generality is exactly what the Seventh Circuit rejected in *Craigslist*. Providing a forum for third-party buyers and sellers does not mean that eBay directed or induced a particular person to sell a defeat device. To the contrary, eBay directed users not to sell defeat devices, and policed the platform for noncompliance. Mot. 16-17. EPA once recognized that "a person's efforts to prevent [a prohibited act] [are] evidence that they did not cause [a] violation" under the CAA. *Control of Emissions from Nonroad Spark-Ignition Engines and Equipment*, 73 Fed. Reg. 59034, 59135 (Oct. 8, 2008). The Government does not explain why a different rule should apply here.

-8-

## II. THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE FIFRA.

In its opening brief, eBay explained that it did not violate any of FIFRA's many specific prohibitions—*e.g.*, "hold," "ship," "deliver," or "release." 7 U.S.C. § 136(gg). In response, the Government contends only that eBay's actions "constitute a 'sale' or 'offer to sell'" of certain prohibited pesticides under FIFRA. Opp. at 22. The Government has thus waived any argument that eBay violated any other terms of the statute. *See Scott* v. *JPMorgan Chase & Co.*, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (citing cases). And the Government's arguments on "sell" and "offer to sell" fail for all the reasons eBay has already explained.

## III. THE OPPOSITION CONFIRMS THAT EBAY DID NOT VIOLATE TSCA.

eBay likewise did not "distribute in commerce" any products under the Methylene Chloride Rule. 40 C.F.R. § 751.105(c). To distribute such products in commerce means "to sell" them, "to introduce or deliver [them] for introduction into commerce," or "to hold [them] . . . after [their] introduction." *Id.* § 751.103; 15 U.S.C. § 2602(5). As to the first prong, the Government merely reiterates its same incorrect arguments that eBay is a seller. Opp. 20-21.[4] As to the third prong, the Government does not argue (and thus waives any argument) that eBay held any products. *Id.*

That leaves only whether eBay "introduce[d] or deliver[ed] for introduction into commerce" any paint-removal products with methylene chloride. It did not. As eBay has explained, and as the Government does not dispute, to "deliver" means "to give, transfer," or "yield possession or control of." *Webster's Third New International Dictionary* 597 (3d ed. 1993). As for "introduc[ing]" products "into commerce," the Government offers no reason to depart from the

---

[4] The Government argues that because TSCA lists "the phrases 'to sell' and 'the sale of'" separately, "the sale of" must cover persons other than the seller. Opp. 21 n.14. That is wrong. The statute provides the two alternatives as a matter of grammar, not substance. *See* 15 U.S.C. § 2602(5) ("The terms 'distribute in commerce' and 'distribution in commerce' . . . mean to sell, or the sale of, . . . to introduce . . . or the introduction [of], . . . or to hold, or the holding of . . . .").

plain meaning of those words: "to carry out the first transaction that places [an item] into the stream of commerce." Mot. 21. In fact, the only case the Government cites adopts that definition. *See Barnes* v. *United States*, 142 F.2d 648 (9th Cir. 1944). To be sure, *Barnes* held that it did not matter who holds title at the moment of "introduction," but it still identified what that moment is: "the time of delivery of the product to the carrier for shipment" to the customer. *Id.* at 651. The third-party seller, and not eBay, is the only party that language could cover.

IV.  **THE OPPOSITION CONFIRMS THAT SECTION 230 BARS THE GOVERNMENT'S CLAIMS.**

The Government's claims are also barred by Section 230 because they seek to hold eBay responsible for publishing third-party listings. *See* Mot. 22-25. The Government contends (at 24-25) that Section 230 does not apply because its claims rely on other actions, such as processing payments and guaranteeing shipment. Although the Government apparently considers those acts to be "indicia of [eBay's] seller status," Opp. 9, it does not and cannot suggest that those actions *standing alone* would support liability under any of the statutes at issue. That point is dispositive. Without allegations that eBay fails to remove third-party listings (conduct that is plainly immune under Section 230), the Complaint would not state a claim. *See* Mot. 24. Courts applying Section 230 to theories of liability that involve both publisher and non-publisher conduct have applied that type of "conduct-specific approach," examining whether the non-publisher conduct alone states a claim. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2023 WL 7524912, at *7, *11 (N.D. Cal. Nov. 14, 2023); *see, e.g.*, *Corker* v. *Costco Wholesale Corp.*, 2019 WL 5895430, at *6 (W.D. Wash. Nov. 12, 2019). Applying that approach here requires dismissal.

## CONCLUSION

The Government's arguments find no support in ordinary meaning or case law, and are unworkable in practice. This Court should dismiss the Complaint with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Sharon L. Nelles* |
| Stacie Fletcher (admitted *pro hac vice*) | Sharon L. Nelles |
| Rachel Levick (admitted *pro hac vice*) | SULLIVAN & CROMWELL LLP |
| Mia Donnelly (admitted *pro hac vice*) | 125 Broad Street |
| GIBSON, DUNN & CRUTCHER | New York, New York  10004 |
| 1050 Connecticut Avenue NW |  |
| Washington, DC 20036 | Jeffrey B. Wall (admitted *pro hac vice*) |
|  | Zoe A. Jacoby (admitted *pro hac vice*) |
|  | SULLIVAN & CROMWELL LLP |
|  | 1700 New York Avenue, NW, Suite 700 |
|  | Washington, DC 20006 |
|  |  |
|  | Laura Kabler Oswell (admitted *pro hac vice*) |
|  | SULLIVAN & CROMWELL LLP |
|  | 550 Hamilton Avenue |
|  | Palo Alto, CA 94301 |